OPINION
{¶ 1} During the late hours of July 22, 2002, Trooper Christopher Dunn was dispatched to a reported truck fire on State Route 11 near the Mill Road overpass. Upon arrival, Dunn observed the truck completely engulfed in flames. After calling for assistance, the trooper attempted to reach the truck's cab, but was unable owing to the intensity of the fire. After the fire was extinguished, the driver's body was discovered in the hollowed remains of the cab. Dr. Erica Wilson, the coroner who performed the autopsy, determined the truck driver died of "thermal injuries to the head, trunk, and extremities, in addition to blunt impact to the head and blunt impact to the trunk."
 {¶ 2} During the investigation, Trooper Dunn was advised that some rocks were discovered in the cab area of the truck. Dunn retrieved the rocks from the truck's frame rail which was located in approximately the same area of the cab as the driver's body. The rock debris was taken into evidence.
 {¶ 3} Trooper Jennifer Hickok, an accident reconstructionist, was called to investigate the crash. Hickok noted that the vehicle's path showed no signs of evasive action, e.g., braking, swerving, etc. From this, Hickok surmised the driver was unconscious or incapacitated when he veered off the road. Hickok also noted that the victim's unconsciousness was not occasioned by sleep because the rough terrain over which the semi trundled would have shaken him into consciousness.
 {¶ 4} After discovering additional rocks in the area of the ruined cab, Trooper Hickok and other troopers "dug around the path of the vehicle," but "could not find or locate any of that type of rock." Hickok found no other rocks in the vicinity of the crash scene which was virtually undisturbed prior to her arrival.
 {¶ 5} Based upon the investigation of the crash scene, investigators for the State Highway Patrol determined the crash was caused by the rocks discovered in and around the cab of the truck. The investigators believed the rocks were tossed from the overpass, striking and incapacitating the driver which led to the fiery crash.
 {¶ 6} As the investigation continued, Trooper Vicky Casey canvassed the immediate neighborhood attempting to "get leads" for the investigation. After receiving a description of the rocks found at the scene, Casey collected some rocks from a house construction site near the overpass. The rocks were taken into evidence and given to Ann Harris, a professor at Youngstown State University and certified professional geologist, for comparison with the rocks collected at the scene of the crash.
 {¶ 7} After analyzing the samples, Professor Harris concluded all the samples were of the same mineralogy and texture.[1] Based on her tests, Professor Harris concluded all the samples came from the same general area.
 {¶ 8} As the investigation proceeded, Trooper Casey eventually interviewed appellant, Brian Sullivan, regarding his possible involvement in the incident. After a brief conversational exchange, appellant admitted he and two friends were on the bridge when the incident occurred. Appellant gave a statement admitting he and some friends were on a bridge of Route 11 throwing rocks at semis when one of his cohorts "picked up a big rock the size of a softball and threw it." Appellant indicated the rock was retrieved from a dirt pile in front of a small house being built near the bridge.
 {¶ 9} The Ohio State Highway Patrol filed a complaint on October 21, 2002 in the Ashtabula County Court of Common Pleas, Juvenile Division, charging appellant, who was sixteen at the time of the offense, with delinquency. The complaint alleged that, on or about July 22, 2002, appellant engaged in acts which, if committed by an adult, would constitute involuntary manslaughter, in violation of R.C. 2903.04(A) and felonious assault, in violation of R.C. 2903.11. Appellant denied the charges and the matter proceeded to a contested hearing.
 {¶ 10} At the hearing, the state offered testimony from the investigating officers, Dr. Wilson, and Professor Harris. The state also presented videotaped evidence of appellant's confession and offered the testimony of the following juvenile offenders each of whom spent some time with appellant in the Youth Detention Center (YDC): First, Rachel Jarvis testified she had contact with appellant while on "kitchen duty" at YDC. Ms. Jarvis testified appellant told her he "threw a brick off a bridge and hit a semi and the guy — it caught on fire and the guy burned to death."
 {¶ 11} Joshua Jarvis, a youth with whom appellant conversed at YDC, testified: "I asked [appellant] what happened and he explained to me that him and some friends were at a bridge, and that it was like a dare of some sort, and he dropped a brick off and he told me what happened with his hands motioning the semi lost control, went over on its side and caught fire. He told me the guy burned to death." Mr. Jarvis also indicated that, while at the detention center, he broke his ankle and appellant signed the cast "Brick Daddy" and sketched a three-dimensional brick near the signature.
 {¶ 12} Wayland Marks, a juvenile offender with whom appellant spent some significant time while in YDC, testified appellant admitted "[t]hat him and his buddy was fooling around, messing around over an overpass and they started — he threw a rock and started grabbing a brick and throwing other stuff * * * [appellant] said one of them hit a truck driver, killed him or something."
 {¶ 13} Finally, Scott Leninger and Steven Hurst, two juveniles with whom appellant associated while in YDC, each testified appellant admitted to dropping a brick off an overpass which hit a truck and killed the driver.
 {¶ 14} After hearing all the evidence, the juvenile court ruled that the charges against appellant were true and found appellant delinquent by reason of involuntary manslaughter and felonious assault. With respect to the involuntary manslaughter count, the court ordered that appellant be committed to the Ohio Department of Youth Services (ODYS) for an indefinite term ranging from three years or until his twenty-first birthday. With respect to the felonious assault count, the court ordered appellant be committed to ODYS for an indefinite term ranging from one year or until his twenty-first birthday. The commitments were ordered to be served concurrently.
 {¶ 15} Appellant now appeals and assigns the following errors for our review:
 {¶ 16} "[1.] The Ashtabula County Juvenile Court erred to the prejudice of appellant when it found that Dr. Erica Wilson had testified that the blunt trauma to the decedent's head and chest could have had a stunning effect rendering him unconscious and that there was not `one gram' of credible evidence that Mr. Holcomb died of a heart attack and was either died [sic] or unconscious from the heart attack when his truck approached the overpass and subsequently left the road and therefore its decision was against the manifest weight of the evidence on the allegation of involuntary manslaughter if committed by an adult.
 {¶ 17} "[2.] The Ashtabula County Juvenile Court's decision that Brian Sullivan had committed the offense of voluntary manslaughter [sic.] was based on insufficient evidence.
 {¶ 18} "[3.] The Ashtabula County Juvenile Court's decision that Brian Sullivan had committed the offense of felonious assault was based on insufficient evidence."
 {¶ 19} For purposes of continuity, we shall address appellant's assignments of error in reverse order.
 {¶ 20} In his third assignment of error, appellant argues the trial court's verdict, finding him delinquent by reason of felonious assault, was based upon insufficient evidence. Evidential sufficiency invokes an inquiry into due process, State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, 13, and examines whether the state introduced adequate evidence to support the verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. A test for "sufficiency" requires a determination of whether the state has met its burden of production. State v. Chewning, 12th Dist. Nos. CA2004-01-002 CA2004-01-003, 2004-Ohio-6661, at ¶ 34. If the state has produced substantial evidence upon which the factfinder could reasonably conclude that all elements of the charged offense have been proved beyond a reasonable doubt, a reviewing court should not reverse the conviction.State v. Eley (1978), 56 Ohio St.2d 169, syllabus.
 {¶ 21} To sustain the court's determination that appellant was delinquent by reason of felonious assault, we must determine whether the state introduced sufficient evidence to prove, beyond a reasonable doubt, that appellant knowingly caused serious physical harm to the victim. R.C. 2903.11(A)(1).
 {¶ 22} The prosecution's theory of the case can be stated accordingly: Appellant threw a rock from the overpass attempting to strike the victim's truck, the rock hit the truck's windshield, the truck went off the road, burst into flames, and the victim was killed. Appellant initially contends that the state presented no evidence that appellant caused serious physical harm to the victim; put differently, appellant contends the state failed to prove the victim was struck by a rock thrown by appellant. In support, appellant cites Dr. Wilson's testimony that the victim's injuries could have been caused by sudden deceleration and were not necessarily a result of being struck by an object thrown from a bridge. Appellant contends this testimony refutes the state's theory of the case because it shows the victim's injuries and ultimate death may have been the result of something other than being struck with a rock.
 {¶ 23} We must initially note that appellant's argument does not address the issue set forth in his third assignment of error. Dr. Wilson's testimony regarding a possible alternative medical explanation for the victim's death may indeed weigh against the state's theory of the case; however, this testimony does not nullify the evidence produced by the state in support of its theory, i.e., Dr. Wilson's testimony regarding "sudden deceleration" does not, unto itself, render the state's evidence insufficient. With this in mind, it is our belief the state did present sufficient evidence on the causation prong of the felonious assault charge.
 {¶ 24} At the hearing, the state presented evidence that the victim's death was caused by "thermal injuries of head, trunk, and extremities, blunt impact to head, and multiple impacts to the trunk." While there were no apparent external injuries to the skull, there was evidence of brain hemorrhaging indicating head trauma;[2] further, the victim's sternum was fractured as a result of "[s]ignificant force, either something impacting that part of the body, the chest area, or that part of the chest area impacting something * * *."
 {¶ 25} The state also submitted appellant's videotaped confession. During the confession, appellant revealed he was present when the rock was thrown from the overpass and heard the rock strike the truck's windshield. In addition, the state presented five witnesses all of whom spent time with appellant while in YDC. Each witness testified that appellant admitted to throwing either a rock, brick, or cinder block from an overpass which struck a semi causing the truck to veer off the road and explode into flames.[3] Further, rocks were found in the charred remains of the truck's cab area that, according to geologist, Professor Ann Harris, did not originate from the area of the accident. Rather, the rocks' mineralogy matched the mineralogy of rocks found at a nearby construction site. Appellant admitted the rock thrown came from a construction site near the Mill Road overpass.
 {¶ 26} When placed in the context of the evidence as a whole, the state put forth ample evidence demonstrating the victim's injuries were caused by appellant's actions. Even more, the court had adequate evidence before it to conclude, beyond a reasonable doubt, that appellant dropped a rock off the overpass which struck the victim's truck in such a way as to rupture the windshield and strike the victim rendering him unconscious and causing the truck to leave the road and burst into flames. Thus, the state offered sufficient evidence to prove the causation prong of the felonious assault charge.
 {¶ 27} Appellant next contends that the state failed to present sufficient evidence that he knowingly caused serious physical harm to the victim. A person acts knowingly when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). If a party commits an act which causes a significant risk of harm his or her actions are sufficient to satisfy the requisite probability of harm under R.C. 2901.22(B). State v. Owens (1997),112 Ohio App.3d 334, 338. Here, the trier of fact could have found beyond a reasonable doubt that appellant knew throwing a rock from an overpass and striking a passing truck would probably cause significant physical harm to the driver of the truck. State v. Cooey (1989),46 Ohio St.3d 20, 25. The state presented sufficient evidence on the "knowingly" prong of the felonious assault charge.
 {¶ 28} In sum, the state presented sufficient evidence to prove beyond a reasonable doubt that appellant committed felonious assault. Appellant's third assignment of error is not well taken.
 {¶ 29} In his second assignment of error, appellant maintains that the court's determination that appellant was delinquent by virtue of involuntary manslaughter was not supported by sufficient evidence.
 {¶ 30} 2903.04(A), the statute defining the crime of involuntary manslaughter, provides:
 {¶ 31} "(A) No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 32} Appellant argues that the state failed to present sufficient evidence that appellant caused the victim's death. Appellant focuses upon the testimony of Dr. Wilson; to wit, Dr. Wilson indicated that the blunt impact injuries sustained by the victim could have resulted from the sudden deceleration of his truck. Appellant also underscores that Dr. Wilson could not rule out the possibility that the victim suffered a heart attack and drove off the road.
 {¶ 33} The testimonial evidence appellant cites does not impact the sufficiency of the evidence upon which the court's determination was based; notwithstanding the testimony conceivably weighing in appellant's favor, Dr. Wilson also testified that the blunt impact to the skull could have been obscured by the charring of the scalp and skull thereby making an otherwise visible wound not apparent. The doctor also indicated that the blunt force trauma to the chest and sternum could have resulted from an object impacting upon the victim's chest. To be sure, Dr. Wilson could not absolutely rule out appellant's "sudden deceleration" and "heart attack" theories; however, it is clear the state presented evidence that appellant threw a rock which hit the victim's truck causing the truck to leave the highway and almost immediately combust. The state submitted appellant's taped confession as well as testimony from five separate witnesses all of whom indicated appellant confessed to and in some cases bragged about committing the crime.
 {¶ 34} As indicated previously, "`[s]ufficiency' challenges whether the prosecution has presented evidence on each element of the offense * * *." Schlee, supra, at 13. (Emphasis added). Appellant's argument under his second assignment of error appears to ask this court to reweigh the evidence going to the causation element of the crime. Such a request involves an analysis of the credibility of the evidence before the court which entails a review of the manifest weight of the evidence. Appellant raises this issue in his first assignment of error which we shall address infra. That said, when viewed in a light most favorable to the prosecution, we believe the state presented substantial evidence upon which the factfinder could reasonably conclude that all of the elements of the offense of involuntary manslaughter were proved beyond a reasonable doubt. Id. at 14. Appellant's second assignment of error is without merit.
 {¶ 35} Appellant's first assignment of error attacks the weight of the evidence put forth in support of the court's determination that appellant was delinquent by reason of involuntary manslaughter. While a test of evidential sufficiency requires a determination of whether the state has met its burden of production, a manifest weight inquiry analyzes whether the state met its burden of persuasion. Thompkins, at 308. Specifically, a manifest weight challenge concerns:
 {¶ 36} "`the inclination of the greater amount of credible evidence,
offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducingbelief.'" Thompkins, supra, 387, citing Black's Law Dictionary (6th Ed. 1990), (Emphasis sic.).
 {¶ 37} In his first assignment of error, appellant challenges the weight of the evidence with respect to the causation prong of the crime of involuntary manslaughter and, in so doing, essentially replicates his argument set forth in his second assigned error. Appellant maintains that there was credible evidence offered by Dr. Erica Wilson indicating the victim's death was a result of a heart attack rather than blunt trauma to the head and chest which rendered him unconscious. Dr. Wilson indicated that the victim suffered from heart disease which entailed enlargement of the heart.[4] On cross examination, Dr. Wilson testified that the victim's condition could possibly cause his heart to suddenly stop beating, i.e., cause him to have a heart attack. If the victim suffered a heart attack, appellant concludes, his actions did not cause the death of the victim and his conviction for involuntary manslaughter must be reversed.
 {¶ 38} While an appellate court reviews the record anew when considering a manifest weight claim, the trier of fact is in the best position to evaluate testimony and make credibility determinations. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. When conflicting evidence is presented at trial, a verdict is not against the manifest weight merely because the factfinder finds the state's evidence more credible. State v. Beesler, 11th Dist. No. 2002-A-0011, 2003-Ohio-2814, ¶ 22.
 {¶ 39} Dr. Wilson testified the victim may have been rendered unconscious by a heart attack. However, her testimony also indicated the victim's injuries included blunt trauma to the head and sternum area. The latter testimony, in conjunction with the evidence of appellant's confession and many admissions indicate the juvenile court's verdict was not against the manifest weight of the evidence.
 {¶ 40} We have thoroughly reviewed the record and, in light of our qualified standard of review, we cannot say the juvenile court clearly lost its way in finding appellant a delinquent child by virtue of involuntary manslaughter. Although we agree with appellant that some credible evidence was presented to bolster his theory, we cannot say the weight of the evidence, taken as a whole, militated heavily in his favor. Therefore, we refuse to usurp the judgment of the juvenile court and find the court's determination was supported by the weight of the evidence. Appellant's first assignment of error is without merit.
 {¶ 41} For the foregoing reasons, appellant's three assignments of error are overruled and the judgment of the Ashtabula County Court of Common Pleas, Domestic Relations, Juvenile Division, finding appellant delinquent by reason of felonious assault and involuntary manslaughter are affirmed.
O'Neill, J., Grendell, J., concur.
[1] The rocks from the crash site and the construction site exhibited the same chemical makeup as well as comparatively similar mineral grains which were of same size, shape, and arrangement.
[2] Dr. Wilson testified the injuries to the victim's head were not visually apparent due to the severity of the burns. However, after viewing the tissue under a microscope, she noticed evidence of hemorrhaging in the brain. Dr. Wilson testified that the charred scalp and skull could obscure external evidence of injury or such bleeding could have been the result of the brain bouncing severely in the skull due to sudden deceleration.
[3] While the specific nature of the object varies between a rock, brick, and cinder block, the confession and admissions indicate appellant threw or dropped a dangerous object from a bridge which struck the victim's truck.
[4] Dr. Wilson testified that the victim's enlarged heart was heavier and the walls of the organ were thicker than average. The victim had hardening of the aorta and hardening of the arteries. However, Dr. Wilson noted the arteries were not "narrowed or significantly decreased in caliber."