**CITY OF WILLOUGHBY, Appellee,**

**v.**

**TAYLOR, Appellant.**

[Cite as *Willoughby v. Taylor*, 180 Ohio App.3d 606, 2009-Ohio-183.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2008–L–046.

Decided Jan. 16, 2009.

Richard J. Perez, Willoughby Prosecuting Attorney, for appellee.

Richard P. Morrison, Wickliffe, OH, for appellant.

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} Appellant, David L. Taylor, appeals from the judgment of the Willoughby Municipal court finding him guilty, after trial by jury, of failing to maintain his residence and failing to remove a utility trailer from his residence, each in violation of separate sections of Willoughby's Codified Ordinance ("WCO"). We affirm.

{¶ 2} On August 31, 2007, appellant was charged with violating WCO 1309.08, for failing to maintain his residential property; WCO 1131.11(f), for failing to remove a utility trailer from his front setback; and WCO 1131.03, for using residential property for salvaging or recycling. Appellant pleaded not guilty to the charges and filed a motion to dismiss. The trial court overruled appellant's motion, and the matter proceeded to jury trial.

{¶ 3} At trial, two code inspectors for the city of Willoughby, Karen Brooks and Richard Smith, testified on behalf of the city. During January 2006, Brooks observed and documented, via photograph, the poor condition of appellant's backyard. The photographs show that appellant's property was in complete disarray, with junk material piled in such a scattered fashion that the ground beneath it was scarcely visible. Brooks next visited appellant's property in May 2007 and photographed its condition. Although some of the items had been removed and stacked in a more organized manner, she observed that appellant had collected additional scraps of junk. The May 2007 photographs show that appellant had placed some of the clutter in a storage shed; still, much of the junk was either spilling out of the structure or resting on the ground outside.

{¶ 4} Brooks returned again in June 2007. Her photographs from this visit show that the cluttered character of the backyard, as well as the volume of junk, had increased since May. She further took photos depicting what appeared to be

a disabled vehicle on a utility trailer resting on appellant's "front setback," i.e., "the yard area * * * adjacent to the street that leads to the front of the main building." According to Brooks, the trailer remained there for a period of weeks.

{¶ 5} Brooks testified that she notified appellant of the alleged violations "many times," both verbally and in writing. Through these communications, Brooks testified, she explained what the ordinances required, the nature of his violations, and the action he could take to come into compliance. According to Brooks, appellant failed to remedy the identified problems that, in her testimony, had a "blighting effect" on the adjoining properties.

{¶ 6} Next, Richard Smith, Willoughby's chief building and zoning inspector, took the stand. Smith testified that he also paid visits to appellant's property, and his observations paralleled those of Brooks. Smith testified that he observed the utility trailer on the front setback, as well as "recycled materials, trampoline parts[,] * * * metal parts[,] * * * lawn equipment[, and] * * * generally * * * just a lot of junk" in the backyard. Smith stated that he, like Brooks, spoke with appellant about the condition of his property, but, while junk would "come and go," appellant never substantively addressed the issues Smith identified. Smith agreed with Brooks that the conditions of appellant's property constituted "blighting factors" inconsistent with the way other properties in the neighborhood were maintained.

{¶ 7} After the city rested, four witnesses testified in appellant's defense, including appellant himself. First, appellant's neighbor Angela Getzendiner testified that she observed clutter in appellant's yard, but had never been in his backyard. Next, appellant's neighbor Patricia Conley testified. Conley lives across the street from appellant and, although she stated that his yard always appeared maintained, she had never seen his backyard because a privacy fence surrounded the yard. Appellant's next witness, Deborah Rose, testified that she is a friend of appellant's who had visited his property on five or six occasions between April and September 2007. She testified that she had observed a "grill, [a] wood pile, [and] the dog cages or dog pen," but that appellant had "gotten [the yard] straightened up."

{¶ 8} Finally, appellant testified on his own behalf. Appellant testified that he had a privacy fence surrounding his backyard, which he claimed prevented all but one of his neighbors from seeing his backyard. Nevertheless, appellant admitted to storing various materials in his backyard during the relevant timeframe. He also conceded that he kept a trailer in his driveway, but asserted that it possessed a valid "tag" and was "parked legal." Appellant further acknowledged that the city, through its inspectors, had approached and warned him about the condition of his yard and the placement of his parked trailer.

{¶ 9} At the close of trial, the jury found appellant guilty of failing to maintain his residence and failing to remove a utility trailer from his front setback. The jury acquitted appellant of using his property for salvaging or recycling. Appellant now appeals and assigns three errors for our review. His first assignment of error alleges:

{¶ 10} "The language of Section 1309.08 of the Willoughby City Ordinance is so imprecise as to render the ordinance void for vagueness."

{¶ 11} Appellant argues that WCO 1309.08, governing residential-property maintenance, permits the city to cite individuals based upon an under-defined subjective standard that does not provide sufficient guidance as to what is required for compliance with the ordinance.

[2–4] {¶ 12} Generally, an ordinance will not be considered overly vague when it provides " 'fair notice' to those who must obey the standards of conduct specified therein." *Baughman v. Ohio Dept. of Pub. Safety Motor Vehicle Salvage* (1997), 118 Ohio App.3d 564, 574, 693 N.E.2d 851. "[A] law will survive a void-for-vagueness challenge if it is written so that a person of common intelligence is able to ascertain what conduct is prohibited, and if the law provides sufficient standards to prevent arbitrary and discriminatory enforcement." *State v. Williams* (2000), 88 Ohio St.3d 513, 533, 728 N.E.2d 342, citing *Chicago v. Morales* (1999), 527 U.S. 41, 56–57, 119 S.Ct. 1849, 144 L.Ed.2d 67. However, a statute will not be declared void simply because it could have been worded more precisely. See *Roth v. United States* (1957), 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498.

{¶ 13} Section 1309.08 of the Willoughby City Ordinance regulates the "exterior appearance of premises and structures" and provides as follows:

{¶ 14} *"Residential.* The exterior of the premises, the exterior of dwelling structures and the condition of accessory structures shall be maintained so that the appearance of the premises and all buildings thereon shall reflect a level of maintenance in keeping with the residential standards of the immediate neighborhood so that the appearance of the premises and structures shall not constitute a blighting factor for adjoining property owners nor an element leading to the progressive deterioration and downgrading of the immediate neighborhood with the accompanying diminution of property values * * *."

{¶ 15} The ordinance provides several nonlimiting examples of prohibited conduct, including the storage of commercial and industrial material within public view, unsightly or overgrown landscaping, poorly maintained signage, and ill-kept dwelling and appurtenant structures.

{¶ 16} The ordinance requires residential property to retain a "level of maintenance in keeping with the neighborhood standards of the immediate neighborhood" and prohibits conditions that constitute blighting factors in relation to such standards. Appellant contends that these standards are not based upon an objective or established metric and, thus, their enforcement necessarily hinges upon the subjective discretion of any given inspector. Accordingly, appellant argues that the ordinance fails to provide clear notice regarding the conduct that is prohibited, thereby empowering the city to arbitrarily and discriminatorily cite a resident without restraint. We disagree.

{¶ 17} We first observe that " 'all legislative enactments enjoy a presumption of constitutionality,' and 'the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional.' " *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 345, 673 N.E.2d 1351, quoting *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 446 N.E.2d 449. Further, courts have an obligation to liberally construe statutes to avoid constitutional infirmities. *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1998), 81 Ohio St.3d 480, 481, 692 N.E.2d 560. As to challenges related to a legislative enactment's purported vagueness, the Supreme Court of the United States has stated, "[I]f this general class of offenses [to which the ordinance applies] can be made constitutionally definite by a reasonable construction of the statute, [a court] is under a duty to give the statute that construction." *United States v. Harriss* (1954), 347 U.S. 612, 618, 74 S.Ct. 808, 98 L.Ed. 989.

{¶ 18} The ordinance at issue prohibits conditions that are "blighting factors" on a specific neighborhood and "elements leading to the progressive deterioration and downgrading of the immediate neighborhood with the accompanying diminution of property values * * *." These conditions are not judged in a vacuum but in the context of that neighborhood itself. The ordinance further lists specific examples of prohibitive conditions; although the examples do not entirely correspond to the conditions for which appellant was cited, they provide further guidance as to the type of problems the ordinance was designed to prohibit, i.e., the storage of certain materials visible from a public area, unkempt lawn ornamentation or landscaping, and the degradation of the exteriors of buildings and/or appurtenant structures.

{¶ 19} We believe that a reasonable interpretation of the language of the ordinance, with its assistive examples of prohibited conduct, places a person of ordinary intelligence on fair notice of the conduct prohibited, viz., creating a situation on one's own property that would constitute a blight on adjoining properties and the neighborhood as a whole.

{¶ 20} Of course, the standard under the ordinance requires an investigator to measure the apparent unmaintained property against other properties, i.e., against "the residential standards of the immediate neighborhood." However, we do not believe this contextual analysis implies that the ordinance is unconstitutionally vague. To the contrary, such a requirement can be viewed as a restraint on an investigator's discretion, which would help prevent arbitrary or discriminatory enforcement. Each neighborhood possesses its own unique ethos and physical character; by requiring an inspector to compare a property with its surrounding neighbors and neighborhood, the investigator must place his or her decision to cite a property owner in a specific, verifiable context. The context of the neighborhood consequently controls the discretion of an inspector, thereby limiting, if not preventing, the possibility of discriminatory enforcement. We therefore hold that WCO 1309.08 passes constitutional muster and is not void-for-vagueness.

{¶ 21} Appellant's first assignment of error is overruled.

{¶ 22} Appellant's second and third assignments of error shall be addressed together. They assert:

{¶ 23} "[2.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A).

{¶ 24} "[3.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶ 25} Evidential sufficiency invokes an inquiry into due process, *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, *4, and examines whether the state introduced adequate evidence to support the verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. "A test for 'sufficiency' requires a determination of whether the state has met its burden of production." *In re Sullivan*, 11th Dist. No. 2003-A-0059, 2005-Ohio-1105, 2005 WL 583788, at ¶ 20. If the state has produced substantial evidence upon which the jury could reasonably conclude that all elements of the charged offense have been proved beyond a reasonable doubt, a reviewing court should not reverse the conviction. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

{¶ 26} Alternatively, while a test of evidential sufficiency requires a determination of whether the state has met its burden of production, a manifest-weight inquiry analyzes whether the state met its burden of persuasion. *Thompkins* at 390, 678 N.E.2d 541. Specifically, a manifest-weight challenge concerns:

{¶ 27} " 'the inclination of the greater *amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their

verdict if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*'" (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 990), 1594.

{¶ 28} Appellant's second and third assignments of error challenge his conviction for failing to maintain his residence, in violation of WCO 1309.08.[1] Appellant contends that the city failed to put forth sufficient, probative evidence that his yard caused any deterioration to the neighborhood. We disagree.

{¶ 29} During the city's case-in-chief, Karen Brooks, code inspector for the city of Willoughby, testified that blight or deterioration involves anything that would "take away from the value of a property," including the aesthetic value. During jury instructions, the trial court defined a "blighting factor" as "any factor that contributes to the deterioration of the neighborhood."

{¶ 30} The evidence at trial demonstrated that appellant stored and/or piled all manner of "junk" in his back yard, ranging from ambiguous plastic products to an abundance of metal and wood scrap materials. The photographs from January 2006 demonstrate that these items were not arranged in any discernable order, but were strewn about indiscriminately to form one large amassment of refuse.

{¶ 31} The photos from May 2007 show a cluttered mélange of similar items sitting inside and spilling out of what appears to be a ramshackle shed. While these photos show more order than those taken in 2006, the variously shaped metal, plastic, and wood scrap is nevertheless arranged in an unkempt and disheveled fashion. Pictures taken approximately one month later, in June 2007, depict the same shed bulging with clutter and junk; however, the visual evidence shows that the conditions of appellant's yard had collapsed into an even lower ebb of disorder than the month previous, i.e., appellant had apparently accumulated more random scrap, which he had tossed upon already existing piles, and had deposited an amount of firewood that had been carelessly spread near the entrance to the makeshift storage shed.

{¶ 32} The foregoing evidence, in light of Brooks's testimony that the deterioration contemplated by "blight" involves an aesthetic component *and* the trial court's jury instruction on blight, demonstrates that the city put forth sufficient, persuasive evidence to sustain appellant's conviction for failing to maintain his residence.

{¶ 33} Appellant's second and third assignments of error are overruled.

---

1. As indicated above, appellant was also found guilty for failing to remove a utility trailer from his front setback, in violation of Willoughby City Ordinance 1131.11. However, appellant does not specifically challenge this conviction on appeal.

{¶ 34} For the reasons discussed in this opinion, appellant's three assignments of error are overruled, and the judgment of the Willoughby Municipal Court is hereby affirmed.

Judgment affirmed.

TRAPP and CANNON, JJ., concur.