[Cite as *State v. Struble*, 2019-Ohio-4650.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-L-104** |
| MAX S. STRUBLE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2016 CR 000346.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, Ohio 44077 (For Plaintiff-Appellee).

*Edward M. Heindel*, 2200 Terminal Tower, 50 Public Square, Cleveland, Ohio 44113 (For Defendant-Appellant).


THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Max S. Struble, appeals his conviction for illegal assembly or possession of chemicals for the manufacturing of drugs. He challenges the admission of a report concerning his prior purchases of pseudoephedrine, the manifest weight of the evidence supporting the conviction, and the constitutionality of the illegal assembly offense. We affirm.

{¶2} In May 2016, appellant was indicted on three charges: illegal assembly or

possession of chemicals used in the manufacturing of drugs, a third-degree felony under R.C. 2925.041(A); aggravated drug possession, a fifth-degree felony under R.C. 2925.11; and possessing criminal tools, a fifth-degree felony under R.C. 2923.24(A). After a three-day jury trial, he was found guilty of all three offenses. The trial court imposed consecutive prison terms of 36 months on the "illegal assembly" count, 12 months on the "aggravated possession" count, and 12 months on the "criminal tools" count, for an aggregate term of 60 months.

{¶3} Appellant appealed his convictions to this court, and we affirmed his convictions for aggravated drug possession and possessing criminal tools. *State v. Struble*, 11th Dist. Lake No. 2016-L-108, 2017-Ohio-9326, ¶ 52. However, as to illegal assembly or possession of chemicals for the manufacturing of drugs, we reversed the conviction and remanded for a new trial because the state failed to lay a proper foundation for admitting a report regarding appellant's prior purchases of products containing pseudoephedrine. *Id.* at ¶ 20-21.

{¶4} At the second trial, the state presented the testimony of eight witnesses who testified during the first trial. Our review of the transcript for the second trial shows that the testimony of these eight witnesses is almost identical to their original testimony. Thus, our first opinion sets forth an adequate factual summary consistent with the evidence presented during the second trial:

{¶5} "On March 30, 2016, Patrolmen Michael Bruening and Ryan Butler of the Mentor City Police Department were engaged in a theft investigation involving various retail stores on Mentor Avenue. As part of the theft detail, the officers surveilled parking lots of stores for suspicious behavior. The officers wore civilian clothes and drove an

2

unmarked vehicle. They were on the lookout for cars with several people, some of whom would make multiple trips into a store while the others remained in the vehicle.

{¶6} "At approximately 11:30 p.m., the two officers were parked beside a Target retail store when they noticed a tan Saturn pull into the parking lot. The Saturn had four occupants, two females in the front seat, and two males in the back. The two females were later identified as Paige Tiedman and Gwendolyn Tingley. Appellant was sitting behind the front passenger seat.

{¶7} "Appellant and Tiedman exited the vehicle and went into Target, while the other two remained in the vehicle. Seeing this as suspicious, Bruening followed appellant and Tiedman into the store, while Butler continued to watch the vehicle occupants. Initially, Bruening could not locate either appellant or Tiedman in the store. During this time, appellant briefly returned to the Saturn, but immediately went back into the store. After a few moments, Bruening saw appellant make a purchase at the in-store pharmacy. After the purchase was completed and appellant left the area, a pharmacy employee told Bruening that appellant purchased two boxes of Sudafed, each containing forty-eight pills.

{¶8} "Ultimately, appellant and Tiedman separately returned to the car. When the last of them exited the store, Bruening returned to his car. Since Sudafed contains pseudoephedrine, a chemical used to manufacture methamphetamine, the officers followed the Saturn a short distance to a second retail store, Lowe's.

{¶9} "Appellant exited, this time with Gwendolyn Tingley. Appellant changed from a black long-sleeved shirt he wore at Target into a yellow t-shirt. Bruening followed appellant and Tingley into Lowe's. Upon catching up to them in the plumbing department, Bruening saw appellant identify a product on a shelf, drain cleaner, used in the

3

manufacturing of methamphetamine. Appellant then left Tingley and returned to the Saturn. Bruening saw Tingley buy drain cleaner.

{¶10} "Bruening and Butler continued to follow the Saturn when it left and called for assistance. Patrolman Bryan Distrelrath, operating a marked patrol car nearby, responded. When the Saturn turned onto another road, the driver, Paige Tiedman, failed to signal. Bruening and Butler thereafter instructed Distrelrath to initiate a stop. The three officers approached the Saturn, and were joined by a fourth officer.

{¶11} "As Bruening and Butler approached the passenger side of the stopped car, they smelled a faint odor of marijuana. Butler asked appellant if there were drugs inside the vehicle. Appellant confirmed that he had smoked marijuana and had a marijuana pipe in his pants pocket. Butler ordered appellant to exit the car and conducted a pat-down search. In addition to the pipe, the officer found a cut straw and two small bags of white powder in his pockets. When asked, appellant said that the white powder was cocaine. Subsequent tests revealed that the powder was methamphetamine and a trace of methamphetamine was found on the straw.

{¶12} "The other three occupants and the Saturn's interior were also searched. As to Paige Tiedman, a coffee filter and twenty-five methamphetamine pills were found in a baggie under her dress. As to Gwendolyn Tingley, a small hand-held Eagle torch was found in her purse. As to the second male in the back seat, an empty box of Sudafed was found in his pocket. The Target and Lowe's bags were located on the floor beside appellant's feet. One of the Sudafed boxes had already been opened, the pills had been removed, and shoved into the second Sudafed box. The Lowe's bag only contained a two-pound bottle of drainer cleaner. A separate box of non-pseudoephedrine Sudafed

4

and various papers with appellant's name on them were found in a black bag." *Id.* at ¶ 2-9.

{¶13} In addition to the witnesses who testified at both trials, the state presented the testimony of Krista McCormack at the second trial. McCormack works for Appriss Incorporated, a Kentucky company that maintains records of over-the-counter purchases of products containing pseudoephedrine. Ohio law places a restriction upon the amount of pseudoephedrine products an individual can purchase each day and each month. Thus, when someone tries to purchase pseudoephedrine, he must show an ID or driver's license to a pharmacy employee, who swipes the ID card through the cash register and enters all relevant information concerning the purchase. This information is immediately transmitted to Appriss, which records the purchase on its servers. Appriss can produce a report as to each individual, showing both the number of times he purchased a pseudoephedrine product and the number of times a requested purchase has been denied because the person already purchased the limit during a specific period.

{¶14} McCormack is the custodian of Appriss's business records and responds to subpoena requests. As part of her testimony, the state introduced the report covering appellant's pseudoephedrine purchases from August 2013 through March 2016. Appellant objected to the report, contending it is not admissible as a prior bad act under Evid.R. 404(B) because his prior purchases were legal transactions. The trial court overruled the objection, holding that references to prior purchases outside the scope of the indictment are admissible under Evid.R. 404(B) because they are relevant to establishing appellant's intent. The report shows that during the 32-month period, appellant bought pseudoephedrine products on 18 occasions and had one requested

5

purchase blocked.

{¶15} The jury returned a guilty verdict on the sole count of illegal assembly or possession of chemicals for the manufacturing of drugs. The trial court subsequently sentenced appellant to a prison term of 18 months, half of the 36-month term that was imposed after his first conviction.

{¶16} Appellant raises five assignments for review:

{¶17} "[1.] The trial court erred when it admitted 404(B) evidence regarding Struble's previous purchases of pseudoephedrine.

{¶18} "[2.] The admission of testimony regarding Struble's previous legal purchases of pseudoephedrine violated Evid.R. 403, in that its probative value was substantially outweighed by the danger of unfair prejudice.

{¶19} "[3.] The conviction for illegal assembly or possession of chemicals for the manufacture of drugs was not supported by sufficient evidence.

{¶20} "[4.] The conviction for illegal assembly or possession of chemicals for the manufacture of drugs was against the manifest weight of the evidence.

{¶21} "[5.] R.C. 2925.041 is unconstitutional because it is vague and overbroad."

{¶22} Appellant's first two assignments pertain to the admission of the Appriss Inc. National Precursor Log Exchange report, logging his purchases of pseudoephedrine products from August 2013 to March 2016. First, he contends the trial court erred in admitting the report and accompanying testimony under Evid.R. 404(B) because evidence of his prior purchases is not relevant to show intent. Second, he asserts that even if the report is generally admissible, it should have been excluded because the danger of unfair prejudice substantially outweighs the report's probative value.

6

{¶23} Immediately before the start of McCormack's trial testimony, appellant objected to the report on the grounds that his prior purchases of pseudoephedrine products did not constitute criminal activity and, therefore, were irrelevant to the specific charge in this case. In overruling the objection, the trial court relied entirely upon Evid.R. 404(B), which provides in pertinent part:

{¶24} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶25} It "precludes the admission of evidence of other crimes, wrongs, or acts offered to prove the character of an accused in order to show that the accused acted in conformity therewith, but it does not preclude admission of that evidence for other purposes." *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, syllabus. Admissibility turns on three steps:

{¶26} "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403. *Id.* at ¶ 20.

7

{¶27} To obtain a conviction under R.C. 2925.041(A), the state must establish that the defendant knowingly assembled or possessed "one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II * * *." Mere possession in the absence of intent is insufficient.

{¶28} Prior-purchase evidence does not implicate character. *State v. Hash,* 9th Dist. Medina No. 10CA0008-M, 2011-Ohio-859, ¶ 74. It is however relevant to intent.

{¶29} Kemp of the Lake County Narcotics Agency testified that he has more than 20 years of experience as a narcotics officer with a focus on manufacturing methamphetamine. Based upon his review of appellant's report, Kemp opined that appellant's purchase history is consistent with one obtaining pseudoephedrine products to produce methamphetamine. For example, Kemp noted that on August 16, 2013, appellant attempted to purchase pseudoephedrine products at two different pharmacies within ten minutes.

{¶30} Appellant argues that the report should have been excluded under Evid.R. 403(A):

{¶31} "Even though evidence may be relevant, 'evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' Evid.R. 403(A). When considering the admissibility of evidence pursuant to Evid.R. 403, 'the trial court is vested with broad discretion, and an appellate court should not interfere absent a clear abuse of discretion.' *State v. Hanna*, 95 Ohio St.3d 285, 290, 767 N.E.2d 678, 2002-Ohio-2221, at ¶ 29. In order to reverse a criminal conviction, the accused must show the trial court abused its

8

discretion in the admission or exclusion of the evidence in question and that he has been materially prejudiced thereby.  *State v. Clark* (1988), 38 Ohio St.3d 252, 262, 527 N.E.2d 844 * * *."  *State v. Fisher*, 10th Dist. Franklin No. 01AP-1199, 2002-Ohio-3324, ¶ 12.

{¶32}  In arguing that the "prior purchases" report is unduly prejudicial, appellant emphasizes that all of his earlier purchases were legal and there is nothing showing that the pseudoephedrine products he obtained in those purchases was used to produce methamphetamine.  However, these assertions conflict with Kemp's testimony.  First, Kemp noted that there was one instance in which appellant's request to buy a pseudoephedrine product was denied because it exceeded the daily limit.  Second, and more importantly, Kemp testified that appellant's pattern of prior purchases supports the conclusion that he was purchasing pseudoephedrine to manufacture methamphetamine.

{¶33}  Introduction of the report was not unfairly prejudicial.  Through Kemp's testimony, the jury was afforded sufficient information to interpret and apply the report's contents.  As appellant has failed to demonstrate that admission of the report constitutes an abuse of discretion, his first and second assignments are without merit.

{¶34}  Under his next two assignments, appellant contests both the sufficiency and manifest weight of the evidence of his illegal assembly conviction.  Under both challenges, he maintains that the state failed to prove that he intended to use the pseudoephedrine and drain cleaner to make methamphetamine.  He asserts that regardless of the role he played in acquiring those two items, his intent remained unproven because the state failed to show that he began manufacturing the controlled substance.

{¶35}  "When both manifest weight and sufficiency challenges are raised, an appellate court's rejection of the manifest weight argument necessarily means there was

sufficient evidence. *State v. DiBiase*, 11th Dist. Lake No. 2011-L-124, 2012-Ohio-6125, ¶ 38." *In re G.H.*, 11th Dist. Lake No. 2015-L-037, 2015-Ohio-5339, ¶ 20. *Accord, State v. Craig*, 11th Dist. Lake No. 2016-L-113, 2017-Ohio-8939, ¶ 52. Accordingly, our analysis will focus solely upon appellant's manifest weight argument.

{¶36} "'A manifest weight of the evidence challenge contests the believability of the evidence presented. *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93-L-082 [1994 WL 738452, at *4]. When determining whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences drawn from it, consider the witnesses' credibility, and decide whether in resolving the conflicts in the evidence, the trier of fact lost its way and created a manifest miscarriage of justice when it returned a guilty verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 387 [1997] * * *, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1983) * * *. Generally, the weight to be given to the evidence and the credibility of the witnesses [are] primarily for the trier of fact to determine. *State v. Thomas*, 70 Ohio St.2d 79 (1982) * * *, at syllabus. The issue when reviewing a manifest weight of the evidence challenge is whether "there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." *State v. Nields*, 93 Ohio St.3d 6, 25 [2001], * * *, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193-194 [1998], * * *, (emphasis sic). When reviewing a manifest weight of the evidence challenge, an appellate court sits as the "thirteenth juror." *Thompkins, supra*, at 387, * * *. The granting of a new trial is exercised only in exceptional cases where the evidence weighs heavily against a conviction. *Id.*, quoting *Martin, supra*, at 175, * * *.' (Emphasis sic.) (Parallel citations omitted.) *State v. Wynder*, 11th Dist. Ashtabula No.

10

2001-A-0063, 2003-Ohio-5978, 2003 WL 22533459, ¶ 23." *State v. Truckey*, 11th Dist. Ashtabula No. 2017-A-0076, 2019-Ohio-407, ¶ 41.

{¶37} R.C. 2925.041(A) prohibits knowingly possessing or assembling one or more chemicals that can be used in the manufacturing of a controlled substance, while having the specific intent to manufacture that substance. The vehicle appellant and his three companions were using was stopped, and appellant was arrested, before manufacture. Moreover, none of his three companions testified that appellant purchased the Sudafed or assisted in the purchase of the drain cleaner with the intent to manufacture.

{¶38} Nevertheless, there is substantial circumstantial evidence from which a reasonable juror could infer that appellant possessed Sudafed and drain cleaner with the intent to manufacture. As part of our manifest weight analysis in his first appeal, this court rejected appellant's argument that his actions could only be interpreted as innocent:

{¶39} "Appellant next argues that his conviction cannot be based solely upon his purchase of Sudafed because this is innocent behavior of one with a cold or allergies. However, the Sudafed purchase is considered in the context of the other evidence. First, he acted furtively in making the purchase by going in and out of the store twice before completing the transaction. Second, appellant already had some non-pseudoephedrine Sudafed in his black bag. Third, he bought ninety-six pills at one time. Fourth, by the time of the traffic stop, appellant had already taken all of the pills from one Sudafed box and jammed them into the second box. These actions are not consistent with the behavior of someone buying Sudafed to treat a cold." *Struble,* 2017-Ohio-9326, at ¶ 48.

{¶40} Moreover, it is undisputed that within minutes of appellant's Sudafed

11

purchase, he assisted Gwendolyn Tingley in purchasing drain cleaner at a different store. As part of his testimony, Sergeant Kemp stated that drain cleaner is a second chemical routinely used to manufacture methamphetamine.

{¶41} In addition, two bags of methamphetamine were found in appellant's pocket, along with a cut straw with trace methamphetamine, and methamphetamine was found on one of appellant's companions. Last, Sergeant Kemp opined that based upon his experience as a narcotics officer, the pattern of appellant's prior pseudoephedrine purchases demonstrates acquisition of Sudafed with intent to manufacture methamphetamine.

{¶42} Circumstantial evidence can have the same probative value as direct evidence. *State v. DeGenero*, 2017-Ohio-624, 85 N.E.3d 170, ¶ 18 (11th Dist.). Here, the state presented substantial circumstantial evidence from which a reasonable person could infer that appellant possessed with intent to manufacture methamphetamine. The jury did not lose its way, and appellant's conviction is not against the manifest weight or sufficiency of the evidence. His third and fourth assignments are not well taken.

{¶43} Under his final assignment, appellant argues that R.C. 2925.041(A) is unconstitutionally vague and overbroad. Although not raised before the trial court, we exercise our discretion to consider this assignment. *State v. Quarterman*, 140 Ohio St.3d 464, 468, 2014-Ohio-4034, 19 N.E.3d 900.

{¶44} All legislative enactments enjoy a strong presumption of constitutionality. *Kruppa v. City of Warren*, 11th Dist. Trumbull No. 2009-T-0017, 2009-Ohio-4927, ¶ 10. "'That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some

12

particular provision or provisions of the constitution.'" *Id.*, quoting *Xenia v. Schmidt*, 101 Ohio St. 437, 130 N.E. 24 (1920), paragraph two of the syllabus.

{¶45} "Generally, [a statute] will not be considered overly vague when it provides '"fair notice" to those who must obey the standards of conduct specified therein.' *Baughman v. Ohio Dept. of Pub. Safety Motor Vehicle Salvage* (1997), 118 Ohio App.3d 564, 574, 693 N.E.2d 851. '[A] law will survive a void-for-vagueness challenge if it is written so that a person of common intelligence is able to ascertain what conduct is prohibited, and if the law provides sufficient standards to prevent arbitrary and discriminatory enforcement.' *State v. Williams* (2000), 88 Ohio St.3d 513, 533, 728 N.E.2d 342, citing *Chicago v. Morales* (1999), 527 U.S. 41, 56-57, 119 S.Ct. 1849, 144 L.Ed.2d 67. However, a statute will not be declared void simply because it could have been worded more precisely. See *Roth v. Unites States* (1957), 354 U.S. 476, 491, 77 S.Ct. 1304, 1 L.Ed.2d 1498." *Willoughby v. Taylor*, 180 Ohio App.3d 606, 2009-Ohio-183, 906 N.E.2d 511, ¶ 12.

{¶46} The question of whether R.C. 2925.041(A) is too vague to be enforced was considered by the Fourth Appellate District in *State v. Smith*, 4th Dist. Highland No. 09CA29, 2010-Ohio-4507. At the outset of its analysis, *Smith* noted that R.C. 2925.041(A) is similar to R.C. 2923.24(A), prohibiting a person from having possession of a device, instrument, article, or substance, with intent to use it criminally, explaining:

{¶47} "Both statutes provide that the possession of otherwise legal items may be criminal based on the intent of the possessor. Thus, under either, the mere possession is not the prohibited conduct. See *State v. Moon*, Adams App. No. 08CA875, 2009-Ohio-4830, at ¶ 18 (stating that R.C. 2925.041(A) 'requires the state to prove that she intended

13

to manufacture [drugs]'); *State v. McDonald* (1987), 31 Ohio St.3d 47, 49, 509 N.E.2d 57 (stating that, under R.C. 2923.24, '[i]t is the possession coupled with the intent to use the device to commit a crime which is the prohibited conduct').

{¶48} "The Supreme Court of Ohio rejected a facial challenge to the possession-of-criminal-tools statute largely because the statute requires the State to prove intent with regard to the alleged criminal tools. *McDonald* at 49-50, 509 N.E.2d 57. 'By including this scienter requirement, the General Assembly has required both control of the article and the specific intention to use the article to commit a crime. These elements provide sufficient notice to persons of ordinary intelligence of the prohibited conduct.' *Id.* at 49, 509 N.E.2d 57. Similarly, R.C. 2925.041 requires both proof of the assembly or possession of chemicals and proof of intent to use the chemicals to manufacture a controlled substance.

{¶49} "We find this element serves to give persons of common intelligence the ability to determine what conduct is prohibited and provides sufficient standards to prevent arbitrary and discriminatory enforcement." *Id.* at ¶ 38-40.

{¶50} *Smith* is persuasive. A defendant cannot be convicted under R.C. 2925.041(A) based solely upon purchase or possession of a pseudoephedrine product. Instead, in addition to buying or having the chemical, the defendant must also have the intention to use it in manufacturing an illegal drug. These two elements give fair notice of the prohibited behavior. Accordingly, the statute is not unconstitutionally vague or overbroad. Appellant's fifth assignment is also without merit.

{¶51} The judgment of the Lake County Court of Common Pleas is affirmed.

14

TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.