RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

BEVAN & ASSOCIATES, LPA, INC.; THOMAS W. BEVAN;
PATRICK M. WALSH,

> *Plaintiffs-Appellants*,

*v.*

DAVE YOST, in his official capacity as Attorney
General of the State of Ohio; THOMAS H. BAINBRIDGE;
JODIE M. TAYLOR; KAREN L. GILLMOR; STEPHANIE
MCCLOUD,

> *Defendants-Appellees*.

No. 18-3262

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:16-cv-00746—Algenon L. Marbley, District Judge.

Argued: January 30, 2019

Decided and Filed: July 8, 2019

Before: SILER, COOK, and BUSH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Ralph E. Breitfeller, KEGLER, BROWN, HILL + RITTER, Columbus, Ohio, for
Appellants. Michael J. Hendershot, OFFICE OF THE OHIO ATTORNEY GENERAL,
Columbus, Ohio, for Appellees. **ON BRIEF:** Ralph E. Breitfeller, Jason H. Beehler, Saša
Trivunić, KEGLER, BROWN, HILL + RITTER, Columbus, Ohio, for Appellants. Michael J.
Hendershot, Stephen P. Carney, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus,
Ohio, for Appellees.

_____

**OPINION**

_____

JOHN K. BUSH, Circuit Judge.  Appellants, the Ohio law firm of Bevan & Associates, LPA, and its partners (collectively, "Bevan"), bring a First Amendment challenge to the provision in Ohio Revised Code § 4123.88(A) that states, in pertinent part, that "[n]o person shall directly or indirectly solicit authority" (1) to "represent the claimant or employer in respect of" a worker's compensation "claim or appeal," or (2) "to take charge of" any such claim or appeal.  Under the plain meaning of this statutory language that we predict would be applied by the Ohio Supreme Court, the State has prohibited *all* solicitation, whether oral or written, by any person to represent a party with respect to an Ohio workers' compensation claim or appeal.  Such a prophylactic ban violates the First Amendment under *Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988) and other relevant authority.

The solicitation ban is not saved by the argument advanced by the Appellee state officials that the constitutionally questionable language is part of a larger statutory scheme that, according to Appellees, Bevan violated by obtaining claimant information from the Ohio Bureau of Workers' Compensation in an allegedly unlawful manner.  The district court agreed with Appellees and upheld the solicitation ban.  However, whether Bevan is in violation of other provisions of the statute governing disclosure of claimant information, that issue is not relevant to whether the solicitation ban itself is constitutional.  The words in the solicitation ban make no distinction as to how the person doing the soliciting learned of the claimant's information: by its plain terms, the statute bans *all* solicitation regardless of where or how the claimant's information was obtained.  As written, this prohibition is repugnant to the free speech clause of the First Amendment.

We therefore **REVERSE** the district court's grant of summary judgment in favor of Appellees and remand with instructions to grant summary judgment in favor of Bevan.

## I.  BACKGROUND

According to Appellees, Ohio has adopted a "non-tort," non-adversarial approach to workers' compensation insurance.  Under that system, injuries sustained in the workplace are removed from the ambit of traditional tort litigation, and injured workers are compensated instead by a state insurance system.  This approach involves a trade-off "whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability." *Arrington v. DaimlerChrysler Corp.*, 849 N.E.2d 1004, 1009 (Ohio 2006) (quoting *Blankenship v. Cincinnati Milacron Chem., Inc.*, 433 N.E.2d 572, 577 (Ohio 1982)).  This workers' compensation method requires that Ohio maintain information about injured claimants.  The State has enacted Ohio Revised Code § 4123.88 to address how claimant information is to be handled and protected by the Ohio Bureau of Workers' Compensation ("Bureau").  This statute also contains the solicitation ban at issue in this case.

Ohio Revised Code § 4123.88 contains five subsections or "divisions," (A)–(E).  Portions of division (A) trace back to an Ohio law enacted in 1931, which included a solicitation ban as to workers' compensation claims, providing for fine and imprisonment of "whoever shall directly or indirectly solicit authority from a claimant or employer to take charge of any claim pending before the industrial commission," 114 Ohio Laws 789, 791 (1931).  As a result of amendments in 1953 and 2006, division (A) now reads as follows (with the solicitation ban denoted with emphasis below):

> (A) No person shall orally or in writing, directly or indirectly, or through any agent or other person fraudulently hold the person's self out or represent the person's self or any of the person's partners or associates as authorized by a claimant or employer to take charge of, or represent the claimant or employer in respect of, any claim or matter in connection therewith before the bureau of workers' compensation or the industrial commission or its district or staff hearing officers. ***No person shall directly or indirectly solicit authority, or pay or give anything of value to another person to solicit authority, or accept or receive pay or anything of value from another person for soliciting authority, from a claimant or employer to take charge of, or represent the claimant or employer in respect of, any claim or appeal which is or may be filed with the bureau or commission.*** No person shall, without prior authority from the bureau, a member of the commission, the claimant, or the employer, examine or directly or

indirectly cause or employ another person to examine any claim file or any other file pertaining thereto. No person shall forge an authorization for the purpose of examining or cause another person to examine any such file. No district or staff hearing officer or other employee of the bureau or commission, notwithstanding the provisions of section 4123.27 of the Revised Code, shall divulge any information in respect of any claim or appeal which is or may be filed with a district or staff hearing officer, the bureau, or commission to any person other than members of the commission or to the superior of the employee except upon authorization of the administrator of workers' compensation or a member of the commission or upon authorization of the claimant or employer.

Ohio Rev. Code § 4123.88(A) (emphasis added).

The 2006 amendment made no change from the 1953 version in the text that now appears in division (A) other than to add gender-neutral language. The 2006 amendment did, however, make substantial revisions to Ohio Revised Code § 4123.88 as a whole by adding divisions (B)–(E), which did not appear in the prior version of the statute. This additional text reads as follows:

(B) The records described or referred to in division (A) of this section are not public records as defined in division (A)(1) of section 149.43 of the Revised Code. Any information directly or indirectly identifying the address or telephone number of a claimant, regardless of whether the claimant's claim is active or closed, is not a public record. No person shall solicit or obtain any such information from any such employee without first having obtained an authorization therefor as provided in this section.

(C) Except as otherwise specified in division (D) of this section, information kept by the commission or the bureau pursuant to this section is for the exclusive use and information of the commission and the bureau in the discharge of their official duties, and shall not be open to the public nor be used in any court in any action or proceeding pending therein, unless the commission or the bureau is a party to the action or proceeding. The information, however, may be tabulated and published by the commission or the bureau in statistical form for the use and information of other state agencies and the public.

(D)(1) Upon receiving a written request made and signed by an individual whose primary occupation is as a journalist, the commission or the bureau shall disclose to the individual the address or addresses and telephone number or numbers of claimants, regardless of whether their claims are active or closed, and the dependents of those claimants.

(2) An individual described in division (D)(1) of this section is permitted to request the information described in that division for multiple workers or dependents in one written request.

(3) An individual described in division (D)(1) of this section shall include all of the following in the written request:

(a) The individual's name, title, and signature;

(b) The name and title of the individual's employer;

(c) A statement that the disclosure of the information sought is in the public interest.

(4) Neither the commission nor the bureau may inquire as to the specific public interest served by the disclosure of information requested by an individual under division (D) of this section.

(E) As used in this section, "journalist" has the same meaning as in division (B)(9) of section 149.43 of the Revised Code.

*Id.* § 4123.88(B)–(E).

Also, before 2006, although claimant information received some limited protection from disclosure by § 4123.88, it was still subject to Ohio public records laws. As a result, claimant information could be obtained by the public through the submission of an appropriate public records request. As part of the 2006 legislation, the Ohio General Assembly amended § 4123.88 to, among other things, exclude the contact information of workers' compensation claimants from being discoverable through public records requests. However, the legislature created an exception, in divisions (D) and (E) as quoted above, that allowed journalists to make records requests for claimant information—including claimants' names and addresses. Although the law in its current form requires a journalist making such a request to give a statement that she or he seeks the information in the public interest, there is no explicit enforcement mechanism to ensure that the journalist actually uses the information in furtherance of the public interest. *See* Ohio Rev. Code § 4123.88(D)(4) ("Neither the commission nor the bureau may inquire as to the specific public interest served by the disclosure of information requested by an individual under division (D) of this section.").

Bevan is an Ohio law firm that represents Social Security Disability Insurance and workers' compensation claimants. Before the 2006 amendments to § 4123.88, Bevan was able to obtain claimant names and addresses by submitting public records requests to the Bureau. Bevan used this information, as well as information gained from various other third-party sources, to craft written solicitations targeted at workers' compensation claimants. After

§ 4123.88 was amended, Bevan could no longer directly acquire claimant names and information from the Bureau. Instead, Bevan relied upon the journalist exception to gather that information.

Bevan hired Capital Publishing, a journalistic service, and Regina Mace, a former client and apparent journalist,[1] to use the journalist exception to gain access to the Bureau's claimant information. Bevan then combined the information it acquired from the journalists with information it had obtained from other outlets (including claimant information obtained from the Bureau prior to the 2006 amendments) to compile a list of individuals who would eventually receive direct mail advertisements. Bevan then sent advertisements to these potential customers. The advertisements were addressed to "INJURED . . . WORKER" and alerted the worker to the fact that they might be "entitled to an additional *CASH AWARD* for your injury that the Ohio Bureau of Workers Compensation (BWC) has not told you about!" R. 38-2, PageID 172–73. Bevan's letters also included a disclaimer which stated that "This ADVERTISING MATERIAL is not intended to be a SOLICITATION under Ohio's Rules governing lawyers, as it is unknown whether the recipient is in need of legal services." *Id.* at PageID 173.

From 2007 to 2016 Bevan used information acquired by its journalists for its marketing campaigns. In February 2016, Mace received a subpoena from an Ohio grand jury that was investigating a possible violation of § 4123.88. A violation of § 4123.88 is a second-degree misdemeanor and carries a potential sentence of 90 days' imprisonment. Ohio Rev. Code §§ 4123.99(D), 2929.24. Thereupon, Bevan ceased its advertising and filed suit in the United States District Court for the Southern District of Ohio, seeking a declaratory judgment that § 4123.88 is unconstitutional. After discovery was complete, Bevan and Appellees cross-moved for summary judgment.

---

[1]In their briefing, Appellees argue that Bevan hired "purported journalists," implying that neither Capital Publishing nor Mace was really a "journalist" as that term is used in the statute. *See* Appellee Br. at 7. However, Appellees did not develop any arguments to support the proposition that the status of Capital Publishing or Mace as bona fide journalists is legally relevant to the constitutionality of § 4123.88. Furthermore, Ohio's statutory definition of "journalist" is so broad that, as Appellees' counsel conceded at oral argument, a law firm that maintains a weblog on its website likely satisfies all the requirements as a journalistic entity for purposes of § 4123.88. Oral Arg. at 21:30–22:00. Therefore, although Appellees hint at Bevan's bad intent, we consider it conceded for purposes of this case that Bevan obtained information through a "journalist" as that term is used in Ohio law. We need not (and will not here) engage in a factual analysis of this question.

In addressing the summary judgment issues, the district court noted that although under *Bates v. State Bar of Arizona*, 433 U.S. 350, 381 (1977), untargeted legal advertising is protected by the First and Fourteenth Amendments, under *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 449 (1978), in-person targeted legal solicitation may be proscribed by a state bar association. The court acknowledged that, read in isolation, Ohio Revised Code § 4123.88(A) could be construed as a ban on all solicitation. However, the district court determined that it would interpret the solicitation ban as applicable only to solicitation based on unlawfully obtained claimant information. The court also found that the law at issue was not a ban on speech, but a ban on *conduct*; essentially, the court found that Ohio, by making it illegal to use unlawfully obtained claimant information to engage in solicitation, was seeking to discourage the unlawful acquisition of that information in the first place. Finally, the court found that the constitutional avoidance doctrine compelled its result: by construing the solicitation ban narrowly, the court could avoid the First Amendment question entirely. For those reasons, the district court found as a matter of law that Bevan's lawsuit could not succeed, and therefore denied Bevan's motion for summary judgment while granting Appellees' motion for summary judgment.

Bevan timely appealed. We will review the district court's decision de novo. *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, where "the parties filed cross-motions for summary judgment, 'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). Here, the facts are not in dispute, and so this case turns on a question of pure law: does the First Amendment prevent Ohio from enforcing the solicitation ban of Ohio Revised Code § 4123.88?

## II. DISCUSSION

Our starting point for statutory interpretation is the text of the statute itself. *See, e.g.*, *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013). Bevan's primary objection on this appeal is to the second full sentence in division (A) of § 4123.88, which reads as follows:

> No person shall directly or indirectly solicit authority, or pay or give anything of value to another person to solicit authority, or accept or receive pay or anything of value from another person for soliciting authority, from a claimant or employer to take charge of, or represent the claimant or employer in respect of, any claim or appeal which is or may be filed with the bureau or commission.

*Id.* § 4123.88(A). Resolution of the First Amendment challenge largely turns on whether to analyze the language in division (A) as it is written, or instead read into that language a limitation based on the broader context of § 4123.88.

Bevan argues that the solicitation ban effects a blanket and unconditional prohibition on solicitation of any sort, whether in person or in writing. As the district court noted, if we "view the particular provisions . . . in isolation, they could fairly be read as banning all attorney solicitation of workers' compensation clients." R. 67, PageID 1255. But Appellees (referred to hereinafter collectively as "Ohio") argue that we should not read the solicitation ban this way.

Ohio advances three primary arguments for its narrow interpretation of the solicitation ban. First, according to Ohio, the text of § 4123.88(A) makes it apparent that the statute restricts only solicitation that is facilitated by wrongfully obtained claimant information. Second, Ohio argues that reading the challenged provision of division (A) in the broader context of § 4123.88 establishes that this subsection applies only to solicitation that has been facilitated by illegally obtained claimant information. Finally, Ohio argues that the canon of constitutional avoidance compels us to interpret the statute in a way that avoids deciding this case in favor of Bevan. Appellee Br. at 24–25 (citing *Mahoning Educ. Ass'n of Developmental Disabilities v. State Emp't Relations Bd.*, 998 N.E.2d 1124, 1129 (Ohio 2013) (holding that courts have a "duty . . . to adopt" interpretations of statutes that avoid constitutional questions)); *Frisby v. Schultz*, 487 U.S. 474, 483 (1988) (explaining that circuit courts commit "plain error" if they reach a constitutional question that could have been avoided by narrowly construing a statute). We will address each of Ohio's arguments in turn.

According to Ohio (and we agree), when interpreting a state statute, we must "follow state interpretations of [those] statutes, and 'must predict' how the state Supreme Court would [interpret the statute] if it has not" yet done so. Appellee Br. at 17 (quoting *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008)). Here, it is not disputed that the Ohio Supreme Court has not yet passed on § 4123.88, and thus we must predict how that court would interpret the statute. No party argues for certification of any issue to the Ohio Supreme Court. Instead, each side argues that this court may decide the meaning of § 4123.88 generally and its solicitation ban in particular based on existing Ohio statutory and case law.

Ohio argues that predicting how the Ohio Supreme Court would interpret the statute requires us to apply the same canons of statutory interpretation that the Ohio Supreme Court would apply. The Ohio Supreme Court does not interpret statutory provisions "in a vacuum, but rather . . . in the context of the statute as a whole." *O'Toole v. Denihan*, 889 N.E.2d 505, 515 (Ohio 2008). Finally, according to Ohio, the entire context of § 4123.88 makes it clear that the statute was intended to restrict improper use of confidential information in solicitation, not to ban all solicitation. Therefore, Ohio urges us to interpret this statute as a conduct regulation rather than a speech regulation. If we follow Ohio's argument, we would apply rational basis scrutiny to the statute rather than a heightened First Amendment scrutiny because no constitutionally protected speech would be implicated. *See Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 693 (6th Cir. 2014) ("[W]here a regulatory scheme neither implicates a fundamental right nor creates a suspect classification, rational basis review applies.").

The problem with Ohio's argument is that the statutory text at issue is unambiguous. For interpreting unambiguous statutory language, the Ohio Supreme Court applies the following rule:

> When confronted with an argument over the meaning of a statute, this court's paramount concern is the legislative intent of its enactment. In discerning legislative intent, [Ohio courts] consider the statutory language in context, construing words and phrases in accordance with rules of grammar and common usage. And *when the meaning of a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary.*

*State ex rel. Prade v. Ninth Dist. Court of Appeals*, 87 N.E.3d 1239, 1242 (Ohio 2017) (per curiam) (emphasis added) (internal citations and quotation marks omitted). Thus, in giving

effect to the words of a statute, the Ohio Supreme Court first reads the words in the natural context of common grammar and usage, and where, as here, the language is unambiguous, it "must be applied as written" and not be subject to "further interpretation." *Id.*

Here, the language of the statute does not admit of any alternative interpretation aside from being a total ban on solicitation: "No person shall directly or indirectly solicit authority, or pay or give anything of value to another person to solicit authority, or accept or receive pay or anything of value from another person for soliciting authority, from a claimant or employer to take charge of, or represent the claimant or employer in respect of, any claim or appeal which is or may be filed with the bureau or commission." Ohio Rev. Code § 4123.88(A).

Ohio tries to argue to the contrary based on statutory text. It contends specifically that the language "from a claimant" and the reference to "the bureau" limit the statute to covering solicitation of injured workers when "the solicitor has some reason to believe that the solicitee is such a person," that is, a person is actually an injured worker. Appellee Br. at 19. But Ohio does not explain how its argument based on statutory text logically requires acceptance of Ohio's position, as stated at oral argument, that solicitation of claimants is only prohibited where the solicitation was facilitated by improperly obtained claimant information and that solicitation of claimants based on properly obtained information (such as observing a claimant with a limp) is not covered by the statute. Oral Arg. at 15:30–16:30.

We find Ohio's argument unpersuasive because the plain language does not contain limitations on the application of the solicitation ban. As noted, where "the meaning of a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *Prade*, 87 N.E.3d at 1242. We believe that the Ohio Supreme Court would agree with Bevan that if the Ohio General Assembly had not intended § 4123.88(A) to be a complete bar to solicitation of claimants, it would have chosen different words.

Similarly, we reject Ohio's argument that the entire context of § 4123.88 limits the application of division (A). Ohio makes two points to back up this contextual argument: first, the fact that division (B) refers to division (A) means that the prohibitions in (A) are only to be enforced in the context of a violation of division (B), and second, the "five prohibitions" of

division (A) "work together to ensure that workers' compensations [sic] claimants receive confidential treatment as they proceed through the system." Appellee Br. at 22. These points not only ignore the clear and unambiguous meaning of the language of the solicitation ban but they also fail based on the wording of the other divisions upon which they rely. As to Ohio's first point, when division (B) refers to division (A), it is not referencing the solicitation ban but rather the ban against obtaining "records" described in division (A). As to Ohio's second point, it is true that division (A) has five prohibitions, one of which is the solicitation ban, but there is no language in that subsection or anywhere else in the statute stating that one or more prohibitions operate to limit the reach of another prohibition. For example, the ban on certain methods of obtaining claimant information applies whether or not the information is used to solicit claimants. Similarly, the ban on solicitation applies whether or not the information used for the solicitation was obtained in violation of the statute.

Besides these statutory considerations, the history of the amendments that led to § 4123.88 in its current form also belies Ohio's arguments. As Ohio notes in its briefing, the Ohio General Assembly originally passed this legislation in 1931. The solicitation ban has been in the law since its inception. To be sure, the law has been updated since then, with the most extensive update occurring in 2006. But there has never been any amendment of the wording of the solicitation ban itself that limited its application to only the circumstances in which the person was solicited through the use of allegedly unlawfully obtained information.

Prior to 2006, § 4123.88 contained no divisions. The revisions of 2006 divided the statute into five subsections, placing the revised language of the old statute (including the solicitation ban) in division (A), with the completely new text assigned to divisions (B)–(E). *See* 151 Ohio Laws, Part I, 1091 (2006). As noted, the only revision of the text appearing in division (A) of the 2006 amendment was the addition of gender-neutral language. For example, the phrase "[n]o person shall . . . hold himself out" was changed to read "[n]o person shall . . . hold the person's self out." *Id.* The language appearing in division (A) was not substantively altered. To put a finer point on the matter, before 2006 Ohio law banned solicitation of workers' compensation claimants, and it did so without the added context of § 4123.88(B)–(E). If legislators had wished to limit the application of the ban on solicitation, they could have made

explicit reference in that ban to the other statutory protections for claimant information contained within the subsequent divisions of the statute.  They did not.  Thus, two important facts—that (1) the offending language of the statute predates the purported contextual clauses, and (2) the legislature amended the statute without referencing the purported contextual clauses in the solicitation ban—lead us to conclude that the legislature intended that all-encompassing ban to mean what it says.

Finally, Ohio's argument that we must interpret the statute so as to avoid a constitutional question is equally unpersuasive.  According to Ohio, because its interpretation avoids constitutional analysis of the statute, whereas Bevan's interpretation requires it, we must defer to Ohio's interpretation.  Once again, Ohio's arguments have superficial merit, but cannot withstand deeper scrutiny.

It is true that Ohio courts "have a duty to liberally construe statutes 'to save them from constitutional infirmities.'" *Mahoning*, 998 N.E.2d at 1128 (quoting *Desenco, Inc. v. Akron*, 706 N.E.2d 323, 328 (Ohio 1999)).  Additionally, federal courts are also obliged to avoid constitutional questions if an alternative interpretation of the statute "though plainly not the best reading, is at least a possible one." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 18 (2013).  However, this canon of statutory interpretation does not allow us to re-write an unconstitutional statute to save it.

"The canon of constitutional avoidance comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction; and the canon functions as *a means* of *choosing between them*." *Clark v. Martinez*, 543 U.S. 371, 385 (2005).  In other words, where a statute is susceptible to multiple interpretations, at least one of which will render the statute constitutional, we adhere to that interpretation over an interpretation that would require us to invalidate the statute.

In the instant case, we do not believe that the plain and unambiguous language of the statute admits of multiple interpretations.  The statute, as written, bars both in-person and written solicitation, with or without the use of ill-gotten claimant information.  We will thus analyze the

statute under the First Amendment as it is written, as a ban on solicitation of any kind by any person of workers' compensation claimants.

Turning now to the First Amendment, it provides protection, in pertinent part, against laws "abridging the freedom of speech." U.S. Const. amend. I.  Although the First Amendment "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression," *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 563 (1980), it nonetheless protects truthful commercial speech that is not related to unlawful activity, *id.* at 564.

Under the framework of *Central Hudson*, when analyzing regulation of commercial speech, we follow a four-part test.  (1) The commercial speech must not be misleading nor relate to unlawful activity, for the First Amendment does not protect "commercial messages that do not accurately inform the public about lawful activity."  *Id.* at 563–64.  If this criterion is satisfied, the regulation can survive only if (2) the government can show a substantial interest in restricting the commercial speech, (3) the regulation at issue directly advances the governmental interest, and (4) the regulation is "designed carefully to achieve the State's goal."  *Id.* at 564. A regulation is "designed carefully" if it directly advances the asserted government interest and there is no more narrow regulation that might achieve the same goals.  *Id.*

The *Central Hudson* doctrine has been further sharpened by several cases that examined attorney advertising.  In *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 642–43 (1985), the Court found that written, untargeted attorney advertising does not constitute an invasion of the privacy of the recipients of the advertising, and thus is protected by the First Amendment.  In *Shapero*, the Court went a step further, and determined that even targeted, written solicitation by an attorney is protected by the First Amendment.  486 U.S. at 478–79.  Although the state has an interest in protecting the privacy of recipients of attorney solicitation, a total ban on solicitation is too broad and too restrictive and therefore fails the fourth prong of *Central Hudson*.

*Shapero* is similar to the instant case.  In *Shapero*, an attorney solicited business to represent homeowners whom he knew to be in the process of being foreclosed upon.  *Id.* at 469.

This type of solicitation violated a rule of the Kentucky Bar Association, which sought to prevent the advertising. *Id.* at 469–70. On appeal from the Supreme Court of Kentucky, the Supreme Court of the United States noted that "[t]he relevant inquiry is not whether there exist potential clients whose 'condition' makes them susceptible to undue influence, but whether the mode of communication poses a serious danger that lawyers will exploit any such susceptibility." *Id.* at 474. The Court indicated that targeted, written solicitation does not contain the type of risk of exploitation as might occur with in-person solicitation. *Id.* at 475. "Unlike the potential client with a badgering advocate breathing down his neck, the recipient of a letter and the reader of an advertisement . . . can effectively avoid further bombardment of [his] sensibilities simply by averting [his] eyes." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 465 n.25 (1978)). Thus, while in-person solicitation might be heavily regulated (or even banned), targeted written solicitation is protected by the First Amendment. *Id.* at 476.

Similar to the attorney in *Shapero*, Bevan is targeting, in writing, certain people—here, those individuals who Bevan knows to be workers' compensation claimants (or potential claimants). The State of Ohio certainly has an interest in protecting the privacy of workers' compensation claimants. As in *Shapero*, however, the state's interest here in protecting solicitee privacy does not extend far enough to justify prohibiting the solicitation. A targeted letter does not "invade the recipient's privacy any more than does a substantively identical letter mailed at large." *Id.* at 476. Because Ohio's interest in protecting claimant privacy cannot outweigh Bevan's right to engage in commercial speech, and because § 4123.88(A) completely bars solicitation, the statute fails the *Central Hudson* test.

We are willing to allow that Ohio has a substantial interest in protecting claimant privacy, and that its current policy directly advances that interest. However, a total ban on written solicitation is not "designed carefully to achieve the State's goal." *Central Hudson*, 447 U.S. at 564. Ohio is free to pursue other means to protect claimant information, including a tailored ban on in-person solicitation of workers' compensation claimants, by attorneys,[2] that is consistent

---

[2]This case presents a unique wrinkle because in Ohio, representation of workers' compensation claimants before the Bureau is not limited to practicing lawyers; at Oral Argument, Ohio conceded that *anyone*, not just

with the constitutional principles explained in *Ohralik*. Ohio is also free to prohibit solicitation based on illegally obtained information. *See Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514 (1972) ("First Amendment Rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute."). But such a narrow prohibition is not contained in the expansive wording of the statute at issue here. Section 4123.88(A), as it is currently written, works a complete ban on all in-person as well as written solicitation, conducted by any person, of workers' compensation claimants and thus is incompatible with the First Amendment.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the decision of the district court and remand with instructions to enter summary judgment in favor of Bevan.

---

attorneys, may represent claimants. This fact is legally relevant because lawyers and non-lawyers are treated differently for purposes of in-person solicitation. As demonstrated above, under *Ohralik*, a state may ban in-person solicitation by attorneys. However, the Supreme Court has narrowly construed this exception and has not applied it to in-person solicitation by non-attorneys. In *Edenfield v. Fane*, 507 U.S. 761 (1993), the Court struck down a Florida ban on in-person solicitation by a Certified Public Accountant ("CPA"). The Court determined that the dangers presented by attorney solicitation are not posed by non-attorney solicitation, in part because "[u]nlike a lawyer, a CPA is not a professional trained in the art of persuasion." *Id.* at 775.

In the instant case, the plaintiff was a law firm. Therefore, we are not presented with the question of whether non-attorneys practicing before the Bureau are more like lawyers as in *Ohralik* or more like accountants as in *Edenfield*. Further, both of the parties briefed and argued as if § 4123.88(A) applied to Bevan as a law firm. Thus, we will leave for another day the question of whether a ban on in-person solicitation as applied to non-attorneys practicing before the Bureau violates the *Central Hudson* test.