RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0258p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

FIRST CHOICE CHIROPRACTIC, LLC; JAMES FONNER, D.C.; PRESTIGE CHIROPRACTIC & INJURY, LLC; RENNES BOWERS, D.C.; ALLIED HEALTH & CHIROPRACTIC, LLC; TY DAHODWALA, D.C.; SCHROEDER REFERRAL SYSTEMS, INC.,

    *Plaintiffs-Appellants*,

*v.*

MIKE DEWINE, Ohio Governor; DAVE YOST, Ohio Attorney General; OHIO STATE CHIROPRACTIC BOARD,

    *Defendants-Appellees*.

Nos. 19-4092/20-3038

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:19-cv-02010—William H. Baughman, Magistrate Judge.

Argued: August 6, 2020

Decided and Filed: August 13, 2020

Before: SUHRHEINRICH, GIBBONS, and BUSH, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Paul W. Flowers, PAUL W. FLOWERS CO., L.P.A., Cleveland, Ohio, for Appellants. Samuel C. Peterson, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Paul W. Flowers, Louis E. Grube, PAUL W. FLOWERS CO., L.P.A., Cleveland, Ohio, for Appellants. Samuel C. Peterson, Benjamin M. Flowers, Michael J. Hendershot, Michael A. Walton, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.   Ohio law prohibits health care practitioners and their agents from directly soliciting business from victims of a motor vehicle accident or crime, by any means other than U.S. mail, until thirty days after the date of the incident.  The plaintiffs in this case are various chiropractors and a referral service that appeal the district court's denial of their request for injunctive and declaratory relief.  They claim that the statute restricts commercial speech in violation of the First Amendment.  They also contend that the restrictions' focus on health care practitioners, but not other professional industries, violates the Fourteenth Amendment's guarantee of equal protection.  Because our precedents squarely foreclose the plaintiffs' challenges, we affirm.

I.

In 2019, the Ohio General Assembly adopted Ohio Revised Code § 1349.05 as part of its biennial budget bill.  H.B. 166, 133rd Gen. Assemb., 2019–2020 Sess. (Ohio 2019).  Section 1349.05 restricts health care practitioners—including chiropractors—and their agents in directly soliciting business from accident or crime victims.  Ohio Rev. Code § 1349.05(A)(3)(e), (B), (C).  Subsection (B) regulates health care practitioners and provides as follows:

> No health care practitioner, with the intent to obtain professional employment for the health care practitioner, shall directly contact in person, by telephone, or by electronic means any party to a motor vehicle accident, any victim of a crime, or any witness to a motor vehicle accident or crime until thirty days after the date of the motor vehicle accident or crime.  Any communication to obtain professional employment shall be sent via the United States postal service.

Subsection (C) provides the same restrictions but with regard to the agents of health care practitioners:

> No person who has been paid or given, or was offered to be paid or given, money or anything of value to solicit employment on behalf of another shall directly contact in person, by telephone, or by electronic means any party to a motor vehicle accident, any victim of a crime, or any witness to a motor vehicle accident or crime until thirty days after the date of the motor vehicle accident or crime.

Any communication to solicit employment on behalf of another shall be sent via the United States postal service.

The plaintiffs in this case largely consist of entities and individuals that provide chiropractic services. One of the plaintiffs, Schroeder Referral Systems, Inc., is a referral service that identifies and contacts prospective patients for health care providers. The plaintiffs claim that they "all rely upon advertising and marketing techniques that permit prompt contact with victims of motor vehicle and pedestrian accidents." (CA6 R. 23, Appellant Br., at 24.)

Prior to the effective date of § 1349.05, the plaintiffs commenced an action for declaratory and injunctive relief. They alleged that the statute violates their constitutional rights to free speech and equal protection. The plaintiffs then filed a motion for a preliminary injunction under Federal Rule of Civil Procedure 65(a).

The district court denied the plaintiffs' motion for a preliminary injunction. It found that the plaintiffs failed to show a substantial likelihood of succeeding on the merits of their free speech and equal protection claims, noting that "strong" precedents foreclosed the plaintiffs' challenges. (DE 22, Mem. Op. & Order, PageID 179.) The plaintiffs appealed the district court's denial of their motion. The parties then stipulated in the district court that they did not intend to put forth any more evidence or arguments, and the district court entered a final judgment denying relief for the plaintiffs. The plaintiffs appealed that judgment as well. We granted their motion to consolidate the two appeals.

II.

The plaintiffs challenge the district court's denial of their request for injunctive relief. They raise two issues on appeal. First, they argue that § 1349.05 imposes restrictions on commercial speech in violation of the First Amendment. Second, they claim that § 1349.05 violates the Fourteenth Amendment's Equal Protection clause by regulating health care practitioners but not other professionals who may similarly contact accident or crime victims.[1] Neither claim has merit.

---

[1]The plaintiffs, in their briefing, also make passing condemnations of the enforcement mechanism contained in § 1349.05(D) and (E). According to the plaintiffs, the provisions allow Ohio to permanently revoke

A.

As a threshold matter, the parties dispute the scope of subsections (B) and (C)—the provisions that place restrictions on the solicitation of accident and crime victims.    The government explains that subsections (B) and (C) forbid health care practitioners and their agents from directly soliciting accident and crime victims in person, by phone, or by electronic means, only within the thirty days following the accident or crime.  The plaintiffs, however, insist on an interpretation where the statute prohibits health care practitioners and their agents from *ever* soliciting business from accident or crime victims, by any means, at any time, unless through U.S. mail.  The plaintiffs even suggest that § 1349.05 permanently bars *indirect* communications, such as television commercials, newspaper listings, and billboards.

In construing § 1349.05, we "must predict how the [Ohio Supreme Court] would interpret the statute," and we "apply the general rules of statutory construction as embraced by the [Ohio] judiciary."  *United States v. Simpson*, 520 F.3d 531, 535–36 (6th Cir. 2008) (citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

We agree with the government's interpretation of the statute and find the plaintiffs' interpretation to be unsupported by the statutory language.  The first sentence of each subsection, together, state that health care practitioners and their agents cannot, as a means of soliciting business, "*directly* contact in person, by telephone, or by electronic means" any party or witness to an accident or crime, "*until thirty days after* the date of the . . . accident or crime." § 1349.05(B), (C) (emphasis added).  The provisions unambiguously lift their restrictions on direct solicitations once thirty days has passed from the date of the accident or crime.  The second sentence then clarifies what form of direct contact is *not* prohibited during the initial

health care practitioners' licenses without a hearing.  The government contends that the enforcement mechanism does no such thing.  Ultimately, we need not address the plaintiffs' characterization of the enforcement mechanism because the plaintiffs have never articulated a claim—such as a due process challenge—based on these allegations. And they fail to explain how purported issues with the enforcement mechanism would pertain to a free speech or equal protection claim.

thirty-day window:   communications through U.S. mail.[2]   *See id.* ("Any communication to obtain professional employment shall be sent via the United States postal service.").

The plaintiffs entirely divorce this second sentence from the rest of the provision and claim that, when read in isolation, the second sentence unambiguously prohibits any form of solicitation at any time except through U.S. mail.  We cannot, however, read this one sentence in isolation—we must read it in the broader context of the statute.  Ohio Rev. Code § 1.42; *see also Elec. Classroom of Tomorrow v. Ohio Dep't of Educ.*, 118 N.E.3d 907, 909 (Ohio 2018) ("Because a statute must be considered as a whole, 'a court cannot pick out one sentence and disassociate it from the context . . . .'" (quoting *State v. Wilson*, 673 N.E.2d 1347, 1350 (Ohio 1997))).

When § 1349.05 is read in its entirety, its scope is clear.  It prohibits health care practitioners and their agents from directly soliciting accident or crime victims, within the thirty days following the accident or crime, by any means other than U.S. mail.  After the thirty days have passed, the statute no longer restricts direct solicitations.  To read the second sentence of subsections (B) and (C) as prohibiting any form of soliciation, at any time, except those through U.S. mail would render the entire preceding sentence meaningless.  In other words, if *all* non-mail direct solicitations were prohibited at *all* times, there would be no need to more narrowly state that non-mail, direct solicitations are banned just in the thirty days after an incident.  *See Boley v. Goodyear Tire & Rubber Co.*, 929 N.E.2d 448, 452 (Ohio 2010) ("No part [of a statute] should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or inoperative." (quoting *State ex rel. Myers v. Bd. of Educ.*, 116 N.E. 516, 517 (Ohio 1917))).  Moreover, contrary to the plaintiffs' suggestion, the statute explicitly regulates only "direct"—and not indirect—communications; thus, under the statute, health care practitioners and their agents are free, at any time, to solicit business by means of general advertisements to the public, such as through television advertisements, newspaper listings, or billboards.

---

[2]Because the second sentences of subsections (B) and (C) are identical, we refer to the sentence in the singular form.

Even if the plaintiffs' interpretation of the statute were plausible, the canon of constitutional avoidance would nevertheless lead us to adopt the government's interpretation. *See State ex rel. Taft v. Franklin Cty. Court of Common Pleas*, 692 N.E.2d 560, 561–62 (Ohio 1998) ("Courts have a duty to liberally construe statutes to avoid constitutional infirmities." (citing *Hughes v. Ohio Bur. Of Motor Vehicles*, 681 N.E.2d 305, 307 (Ohio 1997))); *Willoughby v. Taylor*, 906 N.E.2d 511, 514–15 (Ohio Ct. App. 2009) (observing that "all legislative enactments enjoy a presumption of constitutionality, and the courts must apply all presumptions and pertinent rules of construction so as to uphold, if at all possible, a statute or ordinance assailed as unconstitutional" (internal quotation marks and citations omitted)).  Because, as we explain below, the government's interpretation of § 1349.05 is constitutionally sound, it would prevail over the plaintiffs' misguided and almost-certainly unconstitutional interpretation.

B.

Having clarified the scope of § 1349.05, we next analyze its constitutionality under the First Amendment.  We review the constitutionality of the statute de novo. *Chambers v. Stengel*, 256 F.3d 397, 400 (6th Cir. 2001).

"The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980) (citing *Va. Pharmacy Bd. v. Va. Citizens Consumer Council*, 425 U.S. 748, 761–62 (1976)).  First Amendment jurisprudence, however, "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Id.* at 562–63 (citing *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456–57 (1978)).  The state bears the burden of justifying its commercial speech restriction as consistent with the First Amendment. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 571–72 (2011) (citing *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002)).  In order to justify a restriction on commercial speech, the state must show that "the statute directly advances a substantial government interest and that the measure is drawn to achieve that interest." *Id.* at 572 (citations omitted).

The Supreme Court has delineated a four-part, intermediate-scrutiny test for determining the validity of a regulation on commercial speech. *Cent. Hudson*, 447 U.S. at 566. First, "we must determine whether the expression is protected by the First Amendment"—*i.e.*, the regulated speech at issue must "concern lawful activity and not be misleading." *Id.* Second, we assess "whether the asserted governmental interest is substantial." *Id.* If the speech falls within the ambit of the First Amendment and the governmental interest is substantial, we next consider "whether the regulation directly advances the governmental interest asserted." *Id.* Finally, we ask whether the regulation "is not more extensive than is necessary to serve that interest."[3] *Id.*

This final criterion is less onerous than the least-restrictive-means standard applied to other restrictions on expression. *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173, 188 (1999). The state "must demonstrate narrow tailoring of the challenged regulation to the asserted interest—'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Id.* (quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 480 (1989)).

Both the Supreme Court and our court have applied the above *Central Hudson* test to uphold state restrictions analogous to § 1349.05. *See Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 623–35 (1995); *Capobianco v. Summers*, 377 F.3d 559, 561–64 (6th Cir. 2004); *Chambers*, 256 F.3d 397, 403–05 (6th Cir. 2001). In *Florida Bar*, the Supreme Court found that the Florida Bar's rule against lawyers using direct mail to solicit personal injury clients within thirty days of an accident did not violate the First Amendment. 515 U.S. at 620. Finding that the rule was a restriction on commercial speech, the Court applied the *Central Hudson* test. *Id.* at 623–35. The

---

[3]The plaintiffs cite to the Supreme Court's more recent decision in *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011), to suggest that a stricter level of scrutiny applies to content- and speaker-based restrictions on commercial speech like the one at issue here. Yet they fail to explain how the standard applied in *Sorrell* differs from the *Central Hudson* test. Understandably so, because *Sorrell* neither delineated a new test nor modified the *Central Hudson* test. While the Court did state generally that "heightened" scrutiny applies, it ultimately applied the same *Central Hudson* test to the statute at issue. *See id.* at 565, 572. Although the Court struck down the statute as inconsistent with the First Amendment, there is no reason to believe its conclusion was based on a different level of scrutiny. And, since *Sorrell*, our court has continued to apply the *Central Hudson* test in First Amendment cases concerning commercial restrictions on solicitation of business. *See, e.g.*, *Bevan & Assocs., LPA, Inc. v. Yost*, 929 F.3d 366, 377 (6th Cir. 2019) (applying the *Central Hudson* test to an Ohio statute that prohibited all solicitation, by any individual, to represent a party in a worker's compensation claim); *Kiser v. Kamdar*, 831 F.3d 784, 788–89 (6th Cir. 2016) (applying the *Central Hudson* test to a content- and speaker-based restriction on advertising imposed by the Ohio State Dental Board).

Florida Bar asserted that it has a substantial interest in "protecting the privacy and tranquility of personal injury victims and their loved ones against intrusive, unsolicited contact by lawyers."[4] *Id.* at 624. The Court had "little trouble crediting the Bar's interest as substantial." *Id.* at 625. Regarding the third prong, the Court highlighted evidence showing that the public finds direct-mail solicitation "in the immediate wake of accidents" to be an intrusion on privacy, *id.* at 626, and thus concluded that the direct-mail solicitation regulation directly advanced the Bar's asserted interest, *id.* at 628. Finally, the Court found that the fourth prong was satisfied because "[t]he Bar's rule is reasonably well tailored to its stated objective of eliminating targeted mailings whose type and timing are a source of distress to Floridians." *Id.* at 633.

In *Capobianco*, we relied on *Florida Bar* to uphold a regulation by Tennessee's chiropractic licensing board that restricted chiropractors' ability to solicit recent accident victims. 377 F.3d at 564. The regulation provided as follows: "Telemarketing or telephonic solicitation by [licensed chiropractors], their employees, or agents to victims of accidents or disaster shall be considered unethical if carried out within thirty (30) days of the accident or disaster, and subject the licensee to disciplinary action . . . ." *Id.* at 561 (quoting Tenn. Comp. R. & Regs. § 0260-02–.20(6)(a) (2000)). We found that Tennessee's asserted interests—"protecting the privacy of accident victims, preventing overreaching by chiropractors and their agents and regulating the profession"—were substantial. *Id.* at 562 (citation omitted). We then found that the regulation directly advanced Tennessee's asserted interest in protecting accident victims, and that the regulation was narrowly drawn. *Id.* at 562–63. Similarly, in *Chambers*, we relied on *Florida Bar* and applied the same reasoning as in *Capobianco* to uphold a Kentucky statute that criminalized the solicitation of accident victims by attorneys within thirty days of the accident. 256 F.3d at 403–05.

With these precedents in mind, we conclude that § 1349.05 withstands First Amendment scrutiny under the *Central Hudson* test. It is undisputed that § 1349.05 restricts truthful

---

[4]The Florida Bar also asserted a substantial interest in regulating the reputation of the legal profession and claimed, with supporting evidence, that such direct solicitations damage that reputation. *Florida Bar*, 515 U.S. at 625–27. The government here has not clearly asserted a similar interest in regulating the reputation of the health care profession, instead focusing on the state's interest in protecting the privacy of accident and crime victims. We therefore do not address *Florida Bar*'s discussion of this reputational interest.

communications and thus satisfies *Central Hudson*'s first prong.  And Ohio's asserted interest in protecting the privacy of recent accident and crime victims is certainly substantial.  *See Florida Bar*, 515 U.S. at 625 ("Our precedents also leave no room for doubt that 'the protection of potential clients' privacy is a substantial state interest.'" (quoting *Edenfield v. Fane*, 507 U.S. 761, 769 (1993))).  The third prong is satisfied as well.  Just as the analogous restrictions in *Florida Bar*, *Capobianco*, and *Chambers* directly advanced the government's substantial interests, § 1349.05 directly advances Ohio's substantial interest in protecting the privacy of recent accident or crime victims because, during the thirty-day aftermath of an accident or crime, the statute limits intrusions on that privacy by health care practitioners and their agents.[5]

Finally, § 1349.05 is narrowly tailored in satisfaction of the fourth prong.  The statute only restricts the most intrusive, direct types of solicitations—in person, telephonic, and electronic—as opposed to indirect, public-facing communications such as television or billboard advertisements.  And it lifts those restrictions after thirty days, at which point the victim's trauma or other distress related to the incident has presumably subsided, at least to a degree.  The statute's scope, thus, is "in proportion to the interest served," *Greater New Orleans*, 527 U.S. at 188 (quoting *Fox*, 492 U.S. at 480 (1989)), and it "extend[s] only as far as the interest it serves," *Central Hudson*, 447 U.S. at 565.  Our conclusion is further bolstered by the fact that § 1349.05's restrictions are slightly less onerous than similar restrictions that we and the Supreme Court have upheld.  *See, e.g.*, *Florida Bar*, 515 U.S. at 620 (prohibiting even written

---

[5]The plaintiffs suggest that the government has not satisfied the third prong because § 1349.05 was enacted without any legislative findings or other supporting evidence.  This argument fails for several reasons.  First, anecdotal evidence is sufficient for satisfying this prong. *Florida Bar*, 515 U.S. at 628.  The Ohio General Assembly conducted numerous hearings concerning the solicitation of accident and crime victims, and it heard testimony from both proponents and opponents of restrictions on these solicitations.  *See* History of S.B. 148, 132nd Gen. Assemb. (Ohio 2017), available at https://www.legislature.ohio.gov/legislation/legislation-committee-documents?id=GA132-SB-148.  The government cited to these hearings in its Answer to the plaintiffs' complaint, stating that "[h]arassing and overbearing solicitation practices have been a problem in Ohio that was known to the General Assembly, and regulations such as Ohio's constitute an effective way of addressing Ohio's interests in protecting victims."  DE 28, Answer, PageID 298.  The plaintiffs provide no reasoned basis for assigning less weight to this evidence merely because it was derived from the 132nd General Assembly rather than the 133rd.  Moreover, the government can justify restrictions on speech using evidence from "different locales altogether." *Florida Bar*, 515 U.S. at 628 (collecting cases). Here, the government's reliance on *Capobianco*, in which Tennessee presented evidence of harms caused by direct solicitations of recent accident victims, 377 F.3d at 562, further demonstrates that § 1349.05 directly advances a substantial government interest.  Finally, "simple common sense" can also suffice under the third prong. *Florida Bar*, 515 U.S. at 628 (quoting *Burson v. Freeman*, 504 U.S. 191, 211 (1992)).  Common sense tells us that § 1349.05 directly advances Ohio's interest in protecting the privacy of accident and crime victims by restricting intrusions upon that privacy.

solicitations sent through the mail); *Chambers*, 256 F.3d at 399 (prohibiting direct solicitation of any form).

In sum, because § 1349.05's restrictions survive scrutiny under *Central Hudson*, and because our court and the Supreme Court have upheld materially indistinguishable restrictions in other states, the statute does not violate the First Amendment's guarantee of free speech.

C.

Next, we turn to the plaintiffs' equal protection challenge. The Fourteenth Amendment's Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." The guarantee of equal protection "does not require that all persons be dealt with identically." *Baxstrom v. Herold*, 383 U.S. 107, 111 (1996). Rather, "[i]t requires only that the state treat similarly situated persons alike, and that where the state distinguishes between classifications of persons, the distinction must 'have some relevance to the purposes for which the classification is made.'" *Capobianco*, 377 F.3d at 564–65 (quoting *Chambers*, 256 F.3d at 401); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

The plaintiffs' equal protection claim largely rises or falls with their free speech claim. Our equal protection jurisprudence calls for intermediate scrutiny of commercial speech restrictions like the one at issue here. *See Capobianco*, 377 F.3d at 564 (citing *Chambers*, 256 F.3d at 401). Under this test, commercial speech restrictions "survive constitutional assessment if the implicated measure was narrowly fashioned to further a significant governmental interest." *Id.* (quoting *Chambers*, 256 F.3d at 401). Our court treats this "significant governmental interest" standard and *Central Hudson*'s "substantial government interest" standard as materially indistinguishable. *Id.*; *see also Chambers*, 256 F.3d at 401 ("Because regulation of commercial speech is subject to intermediate scrutiny in a First Amendment challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review."). In *Capobianco*, for example, we held that Tennessee's prohibition against chiropractors soliciting accident victims within thirty days complied with the Equal Protection Clause, and we based our conclusion, in large part, on our First Amendment

finding that the restrictions were narrowly tailored to further a substantial government interest. 377 F.3d at 564.

The same reasoning applies here. Because § 1349.05 survives intermediate scrutiny under the First Amendment analysis, it likewise survives the plaintiffs' equal protection challenge. Put differently, the statute is "narrowly tailored to further a significant governmental interest" in protecting the privacy of accident and crime victims. *Chambers*, 256 F.3d at 401. Although § 1349.05 only regulates health care practitioners—and not other professional industries—this distinction has "some relevance" to the interests the statute advances, *Chambers*, 256 F.3d at 401, because, by the plaintiffs' own admission, health care practitioners such as chiropractors tend to rely on direct solicitation of recent accident victims. In any case, Ohio does indeed regulate other professionals in a similar manner. For example, the Ohio Rules of Professional Conduct bar lawyers from ever soliciting business in person, by telephone, or by live electronic means. Ohio Prof. Cond. Rule 7.3(a). That Ohio regulates these professions through separate instances of rulemaking is not only constitutionally permissible but also expected. *See Schilb v. Kuebel*, 404 U.S. 357, 364 (1971) ("[S]tate legislative reform by way of classification is not to be invalidated merely because the legislature moves one step at a time."). Accordingly, the plaintiffs' equal protection claim is unavailing.

III.

For these reasons, we affirm the district court's denial of declaratory and injunctive relief.