[Cite as *State v. Fecko*, 2022-Ohio-1277.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- v -

THEODORE J. FECKO, II,

        Defendant-Appellant.

CASE NO. 2021-T-0021

Criminal Appeal from the
Court of Common Pleas

Trial Court No. 2020 CR 00773

**O P I N I O N**

Decided: April 18, 2022
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administrative Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Thomas Rein*, 820 West Superior Avenue, Suite 800, Cleveland, OH 44113 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Theodore J. Fecko, II ("Appellant"), appeals his rape conviction following a jury trial. We affirm.

{¶2} The Trumbull County Grand Jury, in October 2020, returned an indictment charging Appellant with one count of rape, a first-degree felony, in violation of R.C. 2907.02(A)(1)(b) & (B) and 2971.03(B)(1)(a). The indictment alleged that Appellant committed the offense against a twelve-year-old female ("the Victim") on or about July 23, 2020.

{¶3} A three-day jury trial was held in April 2021. The prosecution called several witnesses, including the Victim. At the close of the state's case, the defense moved for a judgment of acquittal pursuant to Crim.R. 29, which the trial court denied. Defense counsel requested a jury instruction on the lesser-included offense of gross sexual imposition, which was also denied. The defense rested without presenting any witnesses and unsuccessfully renewed its motion for a judgment of acquittal. The jury returned a guilty verdict. The trial court imposed a mandatory minimum prison term of ten years to a maximum term of life imprisonment and classified Appellant a Tier III Sex Offender. The entry on sentence was journalized April 28, 2021.

{¶4} Appellant advances five assignments of error. His first two assigned errors challenge the legal sufficiency and weight of the evidence:

> [1.] The State failed to present sufficient evidence to sustain a conviction against Appellant.

> [2.] Appellant's conviction is against the manifest weight of the evidence.

{¶5} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." (Citation omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997); *State v. Davis*, 11th Dist. Lake No. 2019-L-170, 2021-Ohio-237, ¶ 187. "In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. Dent*, 163 Ohio St.3d 390, 2020-Ohio-6670, 170 N.E.3d 816, ¶ 15, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

2

**{¶6}** In contrast, a challenge to the manifest weight of the evidence "concerns 'the inclination of the *greater amount of credible evidence* * * * to support one side of the issue rather than the other.'" (Emphasis sic.) *Thompkins* at 387, quoting *Black's Law Dictionary* 1594 (6th Ed.1990). In reviewing the manifest weight of the evidence, we must "consider the entire record, including the credibility of the witnesses, the weight of the evidence, and any reasonable inferences, and determine whether "'the [jury] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"" *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Settle*, 2017-Ohio-703, 86 N.E.3d 35, ¶ 51 (11th Dist.)

**{¶7}** A conclusion that the jury verdict is not against the manifest weight of the evidence necessarily means it was supported by sufficient evidence. Thus, the appellate court need not engage in a separate analysis of sufficiency if it determines the verdict is not against the manifest weight. *State v. Masters*, 11th Dist. Lake No. 2019-L-037, 2020-Ohio-864, ¶ 17.

**{¶8}** To convict Appellant of rape as charged in the indictment, the state was required to prove the following elements beyond a reasonable doubt: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). For present purposes, "sexual conduct" means "without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another." R.C. 2907.01(A).

3

Case No. 2021-T-0021

{¶9}   Testimony from trial witnesses revealed the following:

{¶10}   The incident occurred on July 23, 2020, at which time the Victim was twelve years old.   The Victim lives with her mother, stepfather, and three younger brothers. Appellant lived with his mother ("Neighbor") behind the Victim and her family; their backyards abut.   Appellant's nine-year-old niece ("Niece"), who is also Neighbor's granddaughter, was visiting that week.   The night of July 22, 2020, the Victim and Niece had a sleepover at Appellant and Neighbor's house.   The next day, Appellant took Niece and the Victim with him to run errands and then swimming at Mill Creek Park.   Appellant took pictures of the girls on his phone while they were swimming and jumping into the creek.

{¶11}   The Victim testified that when they returned to Appellant and Neighbor's house that afternoon, the girls looked at the pictures on Appellant's phone.   The Victim felt that a few of them were inappropriate and made her uncomfortable because they were taken of her from behind when jumping into the creek.   She took Appellant's phone and deleted three of the pictures.   The Victim identified these pictures for the jury, including those that she had deleted, which had been extracted from the phone by a computer forensic specialist at the Ohio Bureau of Criminal Investigation.

{¶12}   The girls later wanted to watch television, but Neighbor was using the television in the living room.   They went to the only other television in the home, which was in Appellant's bedroom.   Appellant was asleep in his bed.   Niece laid down beside Appellant, with her feet at his head, and the Victim sat on the foot of the bed.   The girls then began watching TikTok videos on the Victim's cell phone.   So that both girls could

see the screen, the Victim laid back on the foot of the bed, but with her feet still off the bed.

{¶13}  During this time, according to the Victim's testimony, Appellant snoozed his phone alarm a few times.  At one point, Appellant shifted in the bed, reached down, and touched the Victim's breast under her overalls.  The Victim asked Niece if she saw what happened; Niece responded, "saw what."  The Victim said "nothing," and moved over a little bit further from Appellant.  Appellant reached over and touched the Victim's breast again.  This time, the Victim said nothing.  She looked over at Appellant, whose eyes were closed as if he were asleep.

{¶14}  Niece then left the bedroom to use the bathroom.  The Victim testified that Appellant got out of bed, put a shirt on, turned around from his dresser to stand in front of her, put one of his hands up the leg opening of her overall shorts, put his hand inside her underwear, touched her "private part," and then put his finger "in" her "private part." She testified that she "felt it" inside and that it felt "weird and uncomfortable."  The Victim kicked Appellant in the stomach and ran out of the house.

{¶15}  Back at her house, the Victim called her mother ("Mother") and then her stepfather ("Stepfather") to come home.  She told Stepfather what happened, who said they were coming back home.  The Victim then saw Appellant leave his house, so she ran over to retrieve her sleepover bag from Neighbor's house.  The Victim then hid in her parents' bedroom until they came home.

{¶16}  Mother and Stepfather both testified that the phone calls from their daughter were frantic and hysterical, that she was crying and screaming for them to come home, and that they had never heard her so upset.  Mother testified that they found the Victim

Case No. 2021-T-0021

in their bedroom when they returned home; that she was hysterical, shaking, and crying. Stepfather testified that the Victim told him over the phone that Appellant "touched me," and when they returned home, she told him that Appellant "touched me down there." After talking with her some more about what happened, Stepfather went immediately to the Neighbor's house. Appellant was no longer there; Neighbor gave him Appellant's phone number. Stepfather called him multiple times and left a voicemail, but Appellant never answered or returned the calls.

{¶17} When Stepfather returned to the house, Mother called 911. After speaking with the police, Mother took the Victim to Akron Children's Hospital in Boardman for an examination. They spoke with a social worker, together and separately. The Victim's great aunt also met them at the hospital and was present during the exam. Mother took her daughter to the hospital's Child Advocacy Center for a follow-up appointment a few days later.

{¶18} Mother testified that her daughter's behavior changed since the incident: she quit cheerleading, her grades dropped from As and Bs to Ds and Fs, she is scared of people and does not like to be touched, and her counseling appointments increased to twice per week. Stepfather also testified that the Victim has changed since the incident: she appears more fearful, especially of males, and is quieter than before.

{¶19} Dr. James Rechtenwald was a pediatrician on duty in Akron Children's emergency room when the Victim arrived on July 23, 2020. Dr. Rechtenwald testified to the Victim's narrative, which informed his decision to obtain an evidence collection kit. The Victim reported to the doctor that Appellant touched her breasts while she was watching TikTok videos with a friend and that Appellant put his finger inside of her. During

6

his exam, Dr. Rechtenwald found no injuries to the Victim. He testified that this is normal in cases of digital penetration. Celestina Walters, an emergency room nurse at Akron Children's, assisted Dr. Rechtenwald with the evidence collection kit. Nurse Walters testified that they collected swabs and a DNA standard from the Victim's person, as well as the clothes she was wearing. The Victim was referred to the Child Advocacy Center at Akron Children's.

{¶20} Mary Wojciak, a social worker employed by Akron Children's for the past two years, also met with the Victim that evening. Ms. Wojciak testified that she has a master's degree in public administration, a master's degree in social work, and has been a licensed social worker since 2007. Prior to her employment at Akron Children's, Ms. Wojciak was a case worker and investigator with Trumbull County Children Services for 31 years. She is also a trained forensic investigator in all 50 states. At Akron Children's, her duties include interviewing any child who reports to the emergency room due to physical or sexual assault.

{¶21} On July 23, 2020, Ms. Wojciak interviewed the Victim, without Mother present, when she arrived at the emergency room. The Victim informed her that Appellant had touched her breast area over her shirt and her vaginal area with his finger while she was lying on the bed with Appellant and Niece. Specifically, the Victim told her that Appellant went through her shorts, under her underwear, and into her vagina.

{¶22} On July 28, 2020, Ms. Wojciak conducted the follow-up forensic interview with the Victim at the Child Advocacy Center. The interview was audio and video recorded and observed through a one-way mirror by a nurse practitioner. The Victim told Ms. Wojciak that Appellant touched her breast area while they were lying on the bed, then

7

Niece left the room. The Victim said that she had a leg up on the bed when Appellant then got up and put his hand into the pant leg of her overall shorts, under her underwear, and into her private area. Ms. Wojciak testified that the Victim was talkative during the interview but would get sullen, ask for her mom, and put her head down when questioned about the incident with Appellant.

{¶23} Ms. Wojciak testified that, based on her experience conducting hundreds of forensic interviews with children who have experienced sexual assault, it is not unexpected for the children to become sad and tired of talking about the assault because it recreates the trauma they experienced. When questioned about the slight differences in the Victim's recitations of the assault, Ms. Wojciak testified about "incremental disclosures," explaining that it is not unusual for children to add details about the assault as time goes on and that children disclose limited information based upon the questions asked, depending on the child's comfort level.

{¶24} The forensic interview was observed through a one-way mirror by Nurse Practitioner Monique Malmer. Ms. Malmer testified that she has been a registered nurse since 1993, a certified nurse practitioner since 2014, and is currently enrolled in a doctorate program for nursing with a focus on sexual violence. After completing six months of training in the Child Advocacy Center, she was deemed an expert examiner for physical abuse by her collaborating physician and an expert examiner for sexual abuse by the Ohio Attorney General. She has worked at the Center since 2016, during which time she has personally examined approximately 3,000 children, over 2,000 of whom reported sexual abuse.

8

Case No. 2021-T-0021

{¶25} Ms. Malmer testified that the Victim's description of digital penetration as "weird" is not unusual for a child of her age and is consistent with her examination of the Victim. She testified extensively as to why the sensations in the vaginal area are different to a child because the body is maturing and physically changing, and that a child does not have the ability to clearly describe the feeling. Ms. Malmer also testified that her findings during her physical examination of the Victim, i.e., the lack of injury or trauma, was not unexpected. She explained that less than ten percent of all victims of penetrating sexual abuse have physical findings and that digital penetration often does not result in physical injury to the female body. She also testified that the normal exam neither negates the Victim's disclosure of sexual abuse nor excludes the possibility of sexual abuse.

{¶26} Two forensic scientists from the Ohio Bureau of Criminal Investigation ("BCI") testified as to comparative DNA testing that was performed on samples obtained from Appellant and from the Victim's person and underwear. A mixture of DNA was found on the Victim's underwear: the Victim was the major contributor, but the remaining DNA was insufficient to compare to another individual. Further analysis was conducted on the trace amounts of male DNA obtained from the Victim's underwear, and it was determined that Appellant was not a major contributor to the male DNA. It was also clarified for the jury that it is not uncommon to find a mixture of DNA on underwear due to potential transfer of DNA in circumstances such as cohabitation or commingling of laundry. It was also explained that not all touching involves the shedding of skin cells required to leave DNA on an article of clothing.

9

Case No. 2021-T-0021

{¶27} Also introduced at trial was a recorded call initiated by Appellant to his mother, Neighbor, on October 22, 2020, while he was an inmate at the Trumbull County Jail. During the phone call, Neighbor told Appellant that she had heard his DNA *had* been found on the Victim's underwear. Appellant responded, "yeah, it's probably because I just 'whacked off' 20 minutes before that."

{¶28} Detective Sergeant Mike Shuster testified that he was assigned to the investigation of the accusations made against Appellant. The day after the incident, July 24, 2020, Appellant met with the detective at the police department. Appellant was aware of the allegations and denied any involvement. Appellant voluntarily provided a DNA sample. Detective Shuster confiscated Appellant's cell phone and provided him with the seizure forfeiture form. Once the detective had obtained a search warrant for the phone, Appellant provided him with the passcode to his phone, and it was sent to BCI. Within the extraction report he obtained from BCI, Detective Shuster found the photos taken of the girls at Mill Creek Park on July 23, 2020, the Victim's phone number saved in Appellant's contact list, and an attempted call to her phone number on July 5, 2020, around 4:00 a.m. Detective Shuster also looked through the Victim's cell phone, with her parents' permission. Appellant's number was not in the Victim's phone, and there was no communication between her and Appellant.

{¶29} Appellant contends that the jury's guilty verdict is against the manifest weight of the evidence and supported by insufficient evidence because the Victim's testimony is not corroborated by any other evidence. Corroboration is not necessary, however, and the Victim's testimony, if believed, is sufficient to convict Appellant of rape. *See, e.g., State v. Henderson*, 11th Dist. Trumbull No. 2001-T-0047, 2002-Ohio-6715, ¶

10

36 (the state may prove penetration by either physical evidence and/or witness testimony). And, Appellant's conviction is not against the manifest weight of the evidence. Given the unrebutted testimony, including that of the Victim, we cannot say that the jury lost its way in finding the Victim credible and Appellant guilty of rape as charged. Upon finding that his conviction is not against the manifest weight of the evidence, it is also necessarily supported by sufficient evidence. *See State v. Struble*, 2019-Ohio-4650, 148 N.E.3d 24, ¶ 35 (11th Dist.).

{¶30} Appellant's first and second assigned errors lack merit.

{¶31} Appellant's third assigned error reads:

> [3.] Appellant was denied a fair trial by the witness' improper comments while testifying.

{¶32} Appellant claims he was denied a fair trial when two witnesses—social worker Mary Wojciak and nurse practitioner Monique Malmer, who both treated the Victim at the Child Advocacy Center at Akron Children's—were permitted to testify as to their opinions and conclusions in an expert capacity without first being qualified as an expert.

{¶33} Pursuant to Evid.R. 702, a witness may testify as an expert if "[t]he witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons"; "[t]he witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony"; and "[t]he witness' testimony is based on reliable scientific, technical, or other specialized information."

{¶34} "A trial court's determination as to whether a person qualifies as an expert witness will not be overturned absent an abuse of discretion." *State v. Waskelis*, 11th Dist. Portage No. 2011-P-0035, 2012-Ohio-3030, ¶ 62, citing *State v. Rock,* 11th Dist.

11

Case No. 2021-T-0021

Lake No. 2004-L-127, 2005-Ohio-6285, ¶ 74. "Multiple appellate courts in Ohio, including this district, have concluded that a trial court need not expressly state a witness is qualified as an expert before the expert offers opinion testimony." *State v. Brown*, 2013-Ohio-1099, 988 N.E.2d 924, ¶ 20 (11th Dist.), citing *Waskelis* at ¶ 64; *State v. Webb,* 6th Dist. Lucas No. L-90-280, 1991 WL 253811 (Nov. 15, 1991); *State v. Skinner,* 2d Dist. Montgomery No. 11704, 1990 WL 140897 (Sept. 26, 1990); *State v. Washington,* 1st Dist. Hamilton No. C-950371, 1996 WL 164105, *4-5 (Apr. 10, 1996). "Thus, as long as the record demonstrates no abuse of discretion in allowing the testimony, a reviewing court will not disturb expert testimony 'simply because "magic" words do not appear on the face of the record.'" *Brown* at ¶ 20, quoting *Skinner* at *7.

**{¶35}** Ms. Wojciak testified that she has conducted hundreds of forensic interviews with children who have experienced sexual assault. She was permitted to testify as to her experience with delayed and incremental disclosure of sexual abuse in children and of their disinterest in retelling their story because it recreates their trauma. Defense counsel raised a general objection to this line of questioning with Ms. Wojciak, stating a proper foundation had not been laid for her ability to answer. The trial court overruled the objection, stating it was subject to cross-examination. During cross-examination, defense counsel attempted to elicit Ms. Wojciak's opinion as to the Victim's truthfulness during her first and second interviews. The trial court sustained the prosecutor's objection.

**{¶36}** Ms. Malmer testified that she has been a registered nurse since 1993, a certified nurse practitioner since 2014, and is currently enrolled in a doctorate program for nursing with a focus on sexual violence; the Ohio Attorney General granted her status

12

as an expert examiner for sexual abuse; and she has personally examined over 2,000 children who have reported sexual abuse. She was permitted to testify as to the percentage of victims reporting penetration that have corroborating physical findings in an exam; that her lack of physical findings in the Victim's exam neither excludes the possibility of sexual abuse nor negates the Victim's disclosure. Defense counsel did not object to any portion of Ms. Malmer's testimony. Thus, Appellant has forfeited all but plain error review in this respect. *See Brown* at ¶ 19; *see also State v. Eagle*, 9th Dist. Wayne No. 04CA0003, 2004-Ohio-3255, ¶ 22.

{¶37} The trial court did not explicitly state that Ms. Wojciak and Ms. Malmer were qualified as expert witnesses. Nevertheless, the state laid an adequate foundation for the testimony of both witnesses in the field of sexually abused children and established that they possess the requisite skill, experience, training, and education required to qualify them as expert witnesses who could offer an opinion pursuant to Evid.R. 702. We therefore conclude that the trial court neither abused its discretion nor committed plain error by allowing them to offer this testimony. *See, e.g., Brown*, 2013-Ohio-1099, at ¶ 24 and *Waskelis*, 2012-Ohio-3030, at ¶ 65.

{¶38} Appellant's third assigned error lacks merit.

{¶39} Appellant's fourth and fifth assigned errors pertain to the trial court's denial of his request for an instruction on a lesser included offense:

> [4.] The trial court infringed upon and violated Appellant's right to remain silent and right not to testify when it ruled that it would only consider a lesser included offense if Appellant testifies.
>
> [5.] The trial court erred by failing to instruct the jury on the lesser included offenses requested by Appellant.

13

{¶40} Appellant claims that the trial court erred by refusing to instruct the jury on the lesser included offense of gross sexual imposition, as defined in R.C. 2907.05(A)(4): "No person shall have sexual contact with another, not the spouse of the offender * * * when * * * [t]he other person * * * is less than thirteen years of age, whether or not the offender knows the age of that person."

{¶41} "When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser included offense." R.C. 2945.74. *See also* Crim.R. 31(C) ("if lesser offenses are included within the offense charged, the defendant may be found not guilty of the degree charged but guilty of an inferior degree thereof, or of a lesser included offense").

{¶42} "A criminal defendant is entitled to a lesser-included-offense instruction, however, only where the evidence warrants it." (Citation omitted.) *State v. Kidder,* 32 Ohio St.3d 279, 280, 513 N.E.2d 311 (1987). "When a lesser included offense instruction is requested, the trial court's task is twofold: 'first, it must determine what constitutes a lesser included offense of the charged crime; second, it must examine the facts and ascertain whether the jury could reasonably conclude that the evidence supports a conviction for the lesser offense and not the greater.'" *State v. Arcuri*, 11th Dist. Trumbull No. 2015-T-0123, 2016-Ohio-8254, ¶ 64, quoting *Kidder* at 280.

> In determining whether an offense is a lesser included offense of another, a court shall consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed.

14

*State v. Evans,* 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, paragraph two of the syllabus.

{¶43} Gross sexual imposition is a lesser-included offense of rape. *State v. Smith,* __ Ohio St.3d ___, 2022-Ohio-269, ___ N.E.3d ___, ¶ 13, citing *State v. Johnson,* 36 Ohio St.3d 224, 522 N.E.2d 1082 (1988), paragraph one of the syllabus. The difference between the two offenses is that gross sexual imposition is based on "sexual contact," whereas rape is based on "sexual conduct." For present purposes, "sexual contact" means "any touching of an erogenous zone of another," such as the pubic region, "for the purpose of sexually arousing or gratifying either person"; "sexual conduct" means "the insertion, however slight, of any part of the body * * * into the vaginal * * * opening of another." R.C. 2907.01(B) & (A). Thus, if Appellant only touched the Victim's pubic region, without penetration of the vaginal opening, he would be guilty of gross sexual imposition rather than rape.

> {¶44} A criminal defendant is not entitled to a jury instruction on gross sexual imposition as a lesser included offense of rape where the defendant has denied participation in the alleged offense, *and* the jury, considering such defense, could not reasonably disbelieve the victim's testimony as to 'sexual conduct,' R.C. 2907.01(A), and, at the same time, consistently and reasonably believe her testimony on the contrary theory of mere 'sexual contact,' R.C. 2907.01(B).

(Emphasis added.) *Johnson* at paragraph two of the syllabus; *State v. Thomas,* 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus ("[e]ven though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense").

15

Case No. 2021-T-0021

{¶45} The Supreme Court of Ohio has offered various pronouncements as to the standard of review. For instance, in *State v. Wilkins,* 64 Ohio St.2d 382, 388, 415 N.E.2d 303 (1980), the Supreme Court held: "If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense *must* be given. The evidence must be considered in the light most favorable to defendant." (Emphasis added.) Then, in *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, the Supreme Court used language suggesting the trial court has discretion in determining whether to give a lesser included offense instruction: "whether to include such jury instructions lies within the discretion of the trial court and depends on whether the evidence presented could reasonably support a jury finding of guilt on a particular charge"; "[t]he law, the evidence presented, and the discretion of the trial judge play a role in whether lesser-included-offense instructions are appropriate." *Id.* at ¶ 1 & ¶ 21; *see also State v. Adams,* 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240 ("[a]n appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion"). The *Wine* Court also stressed, however, "that a charge on a lesser included offense is *required* when the facts warrant it and improper when the facts do not warrant it:

> If the trier of fact could *reasonably* find against the state and for the accused upon one or more of the elements of the crime charged and for the state on the remaining elements, which by themselves would sustain a conviction on a lesser-included offense, then a charge on the lesser-included offense is required.
>
> Conversely, if the jury could not reasonably find against the state on an element of the crime, then a charge on a lesser-included offense is not only not required, but is also improper.

16

(Emphasis added and emphasis sic.) *Id.* at ¶ 20, quoting *State v. Kilby*, 50 Ohio St.2d 21, 24-25, 361 N.E.2d 1336 (1977).

{¶46} This court has previously acknowledged, however, that because "the trial court essentially engages in a sufficiency of the evidence analysis in determining whether to give a lesser-included-offense instruction[, a]n analysis of the sufficiency of evidence is a legal analysis, not one subject to the discretion of the trial court." *State v. Harper*, 11th Dist. Trumbull No. 2017-T-0096, 2018-Ohio-2581, ¶ 58, citing *Thompkins*, 78 Ohio St.3d at 386 ("In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law."). As stated in *Wine*, "The trial court must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *Wine* at ¶ 34; *see also Harper* at ¶ 58. "Accordingly, we review the trial court's decision with regard to the sufficiency necessary to give the [lesser included] instruction de novo as a matter of law and without deference to the trial court." *Harper* at ¶ 58.

{¶47} Here, the evidence presented does not reasonably support a finding that Appellant only touched the Victim's pubic region, without even the slightest insertion of his finger into her vaginal opening. The Victim's testimony was unequivocal in this regard. She testified that he touched her "private part" and then put his finger "in" her "private part." She testified that she "felt it" inside and that it felt "weird and uncomfortable." There is no contrary evidence from which it could reasonably be inferred that Appellant stopped short of penetration. Therefore, because the jury could not find Appellant guilty of the

17

Case No. 2021-T-0021

lesser included offense, the trial court was neither permitted nor required to instruct the jury on gross sexual imposition.

{¶48} On appeal, Appellant also claims he was entitled to an instruction on the offense of sexual imposition, in violation of R.C. 2907.06(A)(1) or (4):

> (A) No person shall have sexual contact with another, not the spouse of the offender * * * when any of the following applies:
>
> (1) The offender knows that the sexual contact is offensive to the other person * * * or is reckless in that regard.
>
> (4) The other person * * * is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person * * *.

{¶49} Rape, as defined in R.C. 2907.02(A)(1)(b)—engaging in sexual conduct with another who is not the offender's spouse and who is less than thirteen years of age, regardless of whether the offender knows the age—can be committed without sexual imposition, as defined in R.C. 2907.06(A)(1), also being committed. Thus, it is not a lesser included offense. *See Evans*, 2009-Ohio-2974, at paragraph two of the syllabus. And sexual imposition as defined in R.C. 2907.06(A)(4) does not apply here because the Victim was less than thirteen years of age. Thus, the trial court did not err by refusing to instruct the jury on the offense of sexual imposition.

{¶50} Finally, Appellant claims the trial court violated his constitutional right to remain silent and right not to testify by refusing to provide the requested instruction on "sexual contact." *See* the Fifth Amendment to the U.S. Constitution ("No person * * * shall be compelled in any criminal case to be a witness against himself * * *."); *see also* the Fourteenth Amendment (protecting the individual's Fifth Amendment right against self-incrimination from abridgment by the States).

18

Case No. 2021-T-0021

{¶51} Appellant's argument is based on the following exchange that occurred at the close of the state's case:

> THE COURT: All right. As the case stands right now, there are no lesser included offenses. There's been no evidence to support anything other than the original charge. That could change if your client testifies or not depending on what he testifies to.
>
> * * *
>
> [DEFENSE COUNSEL]: Your Honor, concerning – circling back to the lesser included charge, there was testimony from the stand from [the Victim] herself. She first testified that she was touched on the outside of her private. And then she changed her testimony that it was on the inside of the private. So I think that the jury could reasonably consider the definition of sexual conduct versus sexual contact to provide the inclusion of a lesser included.
>
> THE COURT: At this time, I would wholeheartedly disagree. There's been no testimony in this case other than her's that there was contact and penetration. So the only way that's going to change is if he takes the stand, he could submit testimony to create a question of fact to a lesser included offense but without his testimony, there is no way I can see that as a relevant lesser included.
>
> [DEFENSE COUNSEL]: And I think it's just hypothesis if he were to testify, I think there would be a general denial so I don't know if that would even create –
>
> THE COURT: Well, that's why I said it depends on what he testifies to.
>
> [DEFENSE COUNSEL]: Yeah.
>
> THE COURT: So as it stands today, there is no evidence to support a lesser included. But that could change depending on the testimony.
>
> [DEFENSE COUNSEL]: And for the record, I'm requesting it and I understand the Court's position.

19

Case No. 2021-T-0021

> THE COURT: Okay. Anything in the jury instructions other than if he does take the stand and the testimony were to warrant it, we could always throw a lesser included in there.

{¶52} Thereafter, Appellant chose not to testify, and the defense rested its case without presenting any witnesses.

{¶53} First, defense counsel's description of the Victim's testimony was not accurate: she unequivocally accused, reported, and testified that there was penetration. Further, Appellant's argument on appeal is not an accurate description of the trial court's ruling. The trial court did not refuse to instruct the jury on "sexual contact" because Appellant chose not to testify. Rather, the trial court merely recognized that because Appellant chose not to testify and present a defense, there was no evidence to support the requested instruction. The trial court did not in any way infringe upon Appellant's right to remain silent and right not to testify.

{¶54} Appellant's fourth and fifth assigned errors lack merit.

{¶55} The judgment of the Trumbull County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

JOHN J. EKLUND, J.,

concur.